UNITED STATES DISTRIC COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

JOHN DOE,                              )
                                       )
                Plaintiff,             )
                                       )
v.                                     )        No. 3:17-cv-504
                                       )        Judge Phillips
MARK GWYN, Director of the             )
Tennessee Bureau of Investigation,     )
in his official capacity.              )
                                       )
                Defendants.            )

## MEMORANDUM OPINION

Defendant Mark Gwyn ("Director Gwyn"), Director of the Tennessee Bureau of

Investigation ("TBI"), filed a motion to dismiss the claims against him pursuant to Fed. R.

Civ. P. 12(b)(6) [Doc 9].    Having carefully considered the motion, supporting

memorandum [Doc. 10] and plaintiff's response [Doc. 20], the motion is ripe for

determination.

I.      **Relevant Facts**[1]

Plaintiff John Doe is a Tennessee resident who challenges the constitutionality of

the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification,

and Tracking Act of 2004, as amended, Tenn. Code Ann. §§ 40-39-201—218 (hereinafter

---

[1]For purposes of a motion to dismiss, the Court takes the factual allegations in the complaint [Doc.
1] as true.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting that, "when ruling on a
defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained
in the complaint").

"the Act").  Director Gwyn is the Director of the TBI and is sued in his official capacity [Doc. 1 at ¶ 24].  Pursuant to the Act, the TBI is required to:  maintain Tennessee's database of sex offenders, maintain an Internet-accessible public sex offender registry, register offenders (along with other law enforcement agencies), develop registration forms, provide statutorily-required notices to registrants, collect registration fees, and coordinate with national law enforcement and the national sex offender registry [Doc. 1 at ¶ 25].

In 1999, plaintiff entered an Alford plea to one count of attempted aggravated sexual battery and *nolo contendere* to six other counts of sex-based offenses [*Id*. at ¶ 16].  Plaintiff completed his sentence on May 21, 2005, and since that time, he has not been subject to any supervision other than under the sex offender registry laws [*Id*. at ¶ 17].  Plaintiff has had no other criminal convictions since 1999, and he has led a productive life since completing his sentence [*Id*. at ¶¶ 18—19].  Defendant has been employed as a jeweler since his conviction [*Id.* at ¶ 18].

At the time of his guilty plea, Tennessee's then-current sex offender registry statute, the Sexual Offender Registration and Monitoring Act, 1994 Tenn. Pub. Laws, ch. 976, as amended (the "1994 Act"), required plaintiff to register as a "sex offender," but did not otherwise restrict his liberty [*Id*. at ¶ 20].  Further, plaintiff notes that his registration was private because the 1994 Act made the registry information available only to law enforcement [*Id*.].  The 1994 Act also allowed registrants to apply for removal from the registry ten years after completion of their sentence [*Id*.].

The repeal of the 1994 Act and adoption of the current Act in 2004, along with subsequent amendments, has resulted in plaintiff being subject to "numerous, onerous, and

vague restrictions on where he can live, work, or go" [*Id.* at ¶ 21]. For example, plaintiff is now listed in a public internet database, along with his home and work addresses and other identifying information, and he is listed as a "violent sexual offender" [*Id.*]. In 2014, plaintiff became subject to a lifetime registration requirement [*Id.*]. Plaintiff must report to a law enforcement agency each year in the month of his birthday and pay a fee of $150 [*Id.* at ¶ 22]. Plaintiff claims that the retroactive application of the "increasingly onerous and punitive" requirements of the Act "encourage law enforcement to treat him like a pariah and disrupt his and his family members' lives at any moment, without warning or reason" [*Id.*]. Plaintiff contends that, had he known at the time of his guilty plea that he would be subject to "a lifetime of severe restrictions on his liberty," he would have bargained for an alternate disposition or gone to trial [*Id.* at ¶ 23].

After passage of the 2004 Act, five years after his guilty plea and conviction, plaintiff became classified as a "violent sexual offender" and subject to lifetime registration without any individualized determination about his risk or whether lifetime registration is warranted [*Id.* at ¶ 45]. Following the 2014 amendment, fifteen years after his guilty plea and conviction, plaintiff became classified as an "offender against children" and was again subject to lifetime registration without any individualized determination about his risk or whether lifetime registration is warranted [*Id.*]. Plaintiff contends there is no mechanism under the Act to allow him to have his registration obligations eliminated or reduced [*Id.* at ¶ 46]. Plaintiff complains about the reporting, surveillance, and supervision requirements of the Act [*Id.* at ¶¶ 50—55]; the impact of the Act's requirements on his family [*Id.* at ¶¶ 56—60]; the limits on his access to housing [*Id.* at ¶¶ 61—63]; the limits

on his employment and educational opportunities [*Id.* at ¶¶ 64—65]; the restrictions on his travel [*Id.* at ¶¶ 66—72], and his Internet usage and public speech [*Id.* at ¶¶ 73—77]; and his public stigmatization [*Id.* at ¶¶ 78—79]. Plaintiff also complains that the restrictions and obligations of the Act are so vague he is unable to know whether or not he is in violation of the law and so extensive and pervasive that he is "literally unable to comply with the law" [*Id.* at ¶ 80]. Plaintiff argues that the requirements of the Act bear no rational relationship to the risk that individual registrants pose to the community [*Id.* at ¶¶ 92—98]. Plaintiff further argues that the "Exclusion Zones" defined by the Act restrict access to employment, housing, and his ability to engage in normal human activity [*Id.* at ¶¶ 99—106].[2]

Plaintiff alleges that the Act: violates the Ex Post Facto Clause of the United States Constitution [*Id.* at ¶ 111]; violates his Due Process rights to travel and work [*Id.* at ¶¶ 112—120]; violates his First Amendment right to free speech [*Id.* at ¶¶ 121—124]; violates Due Process by imposing retroactive restrictions on him and by breaching his plea agreement [*Id.* at ¶¶ 125—130]; violates Due Process by imposing criminal liability without any proof of actual knowledge of the duty to comply with the law and due to vagueness and impossibility [*Id.* at ¶¶ 131—136]. Plaintiff seeks declaratory and injunctive relief under 42 U.S.C. § 1983 and 28 U.S.C. § 2201 [*Id.* at ¶¶ 12—13].

---

[2]The "Exclusion Zones" to which plaintiff refers are contained in Tenn. Code Ann. § 40-39-211. This provision of the Act imposes a variety of geographic restrictions on where registrants may work, reside, or be present, *e.g.*, "within one thousand feet (1,000') of the property line of any public school, private or parochial school, licensed day care center, other child care facility, public park, playground, recreation center or public athletic field available for use by the general public. Tenn. Code Ann. § 40-39-211(a)(1).

## II.    Standard of Review

Federal Rule of Civil Procedure 8(a)(2) sets out a liberal pleading standard, *Smith v. City of Salem*, 378 F.3d 566, 576 n.1 (6th Cir. 2004), requiring only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it rests,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions."  *Twombly*, 550 U.S. at 555.  "[A] formulaic recitation of the elements of a cause of action will not do," nor will "an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In deciding a Rule 12(b)(6) motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, draw all reasonable inferences in favor of the plaintiff, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that requires th[is Court] to draw on its judicial experience and common sense."  *Id.* at 679.

## III.    Whether Director Gwyn is a Proper Party Defendant

Director Gwyn first argues that he is not a proper defendant because he has no direct or specific authority to enforce the provisions of the Act [Doc. 10 at pp. 3—6].  Director Gwyn argues that the TBI has no general authority as a law enforcement agency to investigate criminal violations of the Act or violations of the residency or employment restrictions.  Instead, Director Gwyn argues "TBI's duties under the Act are administrative only," such as maintaining the Sexual Offender Registry, creating and distributing forms, considering requests for removal from the registry, and providing copies of records upon request [*Id*. at p. 5].  In short, Director Gwyn contends that plaintiff has failed to satisfy the requirements of *Ex Parte Young*, 209 U.S. 123 (1908), for bringing an action against him for injunctive and declaratory relief.

In response, plaintiff relies on two recent opinions, including one from this Court, which hold that the TBI Director is a proper defendant for such claims because the TBI has extensive responsibilities for establishing and operating Tennessee's sex offender registry [Doc. 20 at pp. 3—5 (citing *Doe & Doe v. Haslam*, Nos. 3:16-cv-02862, 3:17-cv-00264, 2017 WL 5187117 (M.D. Tenn. Nov. 9, 2017) (Crenshaw, J.), and *Doe v. Haslam*, No. 3:17-cv-217, 2017 WL 4782853 (E.D. Tenn. Oct. 23, 2017) (Phillips, J.))].  Thus, plaintiff urges the Court to refuse Director Gwyn's "previously made and rejected" arguments [Doc. 20 at p. 4].

The Eleventh Amendment provides sovereign immunity to the states against suits by its own citizens.  U.S. Const. amend. XI.  The succinct analysis of the *Ex Parte Young*

exception to Eleventh Amendment immunity in *Russell v. Lundergan-Grimes*, 784 F.3d

1037 (6th Cir. 2015), properly sets the stage for the arguments in this case:

> [A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989). It is a suit against the State itself. *Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985). The Eleventh Amendment bars many such suits. *Will,* 491 U.S. at 66, 109 S. Ct. 2304. However, there is an exception to States' sovereign immunity under the doctrine announced in *Ex parte Young,* 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), whereby "a suit challenging the constitutionality of a state official's action is not one against the State." *Pennhurst,* 465 U.S. at 102, 104 S. Ct. 900. "In order to fall within the *Ex parte Young* exception, a claim must seek prospective relief to end a continuing violation of federal law." *Diaz v. Mich. Dep't of Corr.,* 703 F.3d 956, 964 (6th Cir. 2013). "*Young* does not apply when a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional state statute." *Children's Healthcare is a Legal Duty v. Deters,* 92 F.3d 1412, 1415 (6th Cir. 1996).

*Russell*, 784 F.3d at 1046–47; *see McNeilus Truck & Mfg., Inc. v. Ohio ex rel. Montgomery*,

226 F.3d 429, 437 (6th Cir. 2000) ("[a]n action seeking to enjoin enforcement of an

allegedly unconstitutional statute through a suit against state officials charged with its

enforcement is not barred by the Eleventh Amendment."). There is no dispute that plaintiff

is seeking prospective relief to enjoin enforcement of the Act.

The *Ex Parte Young* exception "does not reach state officials who lack a 'special

relation to the particular statute' and '[are] not expressly directed to see to its

enforcement.'" *Russell*, 784 F.3d at 1047 (citing *Young*, 209 U.S. at 157). The Sixth

Circuit has noted that the "[g]eneral authority to enforce the laws of the state is not

sufficient to make government officials the proper parties to litigation challenging the law."

*Id*. at 1048 (quoting *1st Westco Corp. v. Sch. Dist. of Phila.*, 6 F.3d 108, 113 (3rd Cir.

1993)).  Thus, the requirement of "some connection with the enforcement of the act" means there must be "a realistic possibility the official will take legal or administrative actions against the plaintiff's interests."  *Id.* (citing *Children's Healthcare is a Legal Duty v. Deters*, 92 F.3d 1412, 1416 (6th Cir. 1996), *cert. denied*, 519 U.S. 1149 (1997)).  Without a connection to the enforcement of the act, the government official retains Eleventh Amendment immunity from suit.  *See Children's Healthcare*, 92 F.3d at 1416.

Director Gwyn argues that he has no authority "to investigate criminal violations of the Act" and the TBI's duties under the Act are "administrative" [Doc. 10 at pp. 4—5].  However, the Sixth Circuit has plainly stated "*Young's* enforcement element is not confined to criminal actions," but may be met "when there is a realistic possibility the official will take legal or administrative actions against the plaintiff's interests." *Russell*, 784 F.3d at 1048.  As set forth in the complaint, it is not merely "a realistic possibility" that the TBI will take legal or administrative action against Plaintiff Doe's interests.  In addition to the Act's many registration requirements implemented by the TBI, plaintiff claims he "was arrested for allegedly violating provisions of the amended statute that require him to register all usernames and social media accounts" [Doc. 1 at ¶ 58].  As Judge Crenshaw noted, "[t]he TBI's duties in the administration of Tennessee's statutory scheme are numerous and significant." *Haslam*, 2017 WL 5187117, at \*10.  Accordingly, the Court finds plaintiff has alleged a plausible claim for relief against Director Gwyn in his official capacity.

**IV.    Whether Plaintiff's Claims are Time-Barred**

Director Gwyn argues that all of plaintiff's claims are barred by the one-year statute of limitations for civil rights claims in Tennessee, Tenn. Code Ann. § 28-3-104(a)(3) [Doc. 10 at pp. 6—11].   Director Gwyn contends that plaintiff's claims accrued when he knew or should have known he was subject to the Act's restrictions and potential penalties. Based on the allegations of the complaint, Director Gwyn contends that plaintiff knew or should have known that the restrictions of the Act were being retroactively applied to his conduct as early as May 21, 2005, and at the latest by July 1, 2015.   In other words, beginning with the application of the Act to plaintiff upon his release from incarceration in 2005, he has been affected by each subsequent amendment to the Act, including the July 1, 2015 amendment.   Thus, plaintiff's challenges should have been filed within one year of the imposition of each of the challenged restrictions.   Because this case was not filed until November 22, 2017, more than two years after the latest amendment to the Act, Director Gwyn argues that this case is time-barred.   Director Gwyn also argues that plaintiff's allegations do not constitute a "continuing violation" that would toll the statute of limitations.

Plaintiff argues that the Act "inflicts retroactive punishment on him every day" and thus "a new cause of action accrues every day" [Doc. 20 at p. 5].  Plaintiff emphasizes that he is seeking injunctive relief from future punishment, rather than damages for past

punishment [*Id*. at pp. 5—6].  Plaintiff relies on Judge Crenshaw's rationale in *Haslam* in support of the continuing violation of his constitutional rights [*Id*. at p. 7].[3]

The statute of limitations for a § 1983 action is the statute of limitations for personal injury actions under the state law where the claim arises.  *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).  Thus, the applicable limitations period for § 1983 claims in Tennessee is one year based on Tenn. Code Ann. § 28-3-104(a).[4] *Id*.  Although the limitations period is borrowed from state law, the "date on which the statute of limitations begins to run in a § 1983 action is a question of federal law." *Id*. at 635.  "Ordinarily, the limitation period starts to run when the plaintiff knows or has reason to know of the injury which is the basis of his action," *i.e.*, "what event should have alerted the typical lay person to protect his or her rights." *Id*.

Although Director Gwyn argues that the plaintiff cannot establish a continuing violation, he acknowledges that plaintiff complains of "continuing consequences" from the Act [Doc. 10 at p. 10].  Plaintiff claims he is "suffering daily violations of his constitutional rights" because of the "ex post facto changes to the Act" [Doc. 20 at pp. 6, 7].  The Court agrees that plaintiff is asserting a continuing violation, a theory that is "rarely extend[ed] to § 1983 actions." *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003).

---

[3]Plaintiff incorrectly argues, "the statute of limitations poses no obstacle to his claims for prospective relief" [Doc. 20 at p. 6].  "A request for declaratory relief is barred to the same extent that the claim for substantive relief on which it is based would be barred." *Int'l Ass'n of Mach. & Aerospace Workers v. TVA*, 108 F.3d 658, 668 (6th Cir. 1997).
[4]Tenn. Code Ann. § 28-3-104(a)(1)(A) provides in pertinent part, "the following actions shall be commenced within one (1) year after the cause of action accrued: [a]ctions for … injuries to the person."

A continuing violation must meet three criteria:

> First, the defendant's wrongful conduct must continue after the precipitating event that began the pattern. … Second, injury to the plaintiff must continue to accrue after that event. Finally, further injury to the plaintiff[] must have been avoidable if the defendants had at any time ceased their wrongful conduct.

*Eidson*, 510 F.3d at 635. "[A] continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Tolbert v. State of Ohio Dep't of Transp.*, 172 F.3d 934, 940 (6th Cir. 2002) (quoting *Nat'l Advertising Co. v. City of Raleigh*, 947 F.2d 1158, 1166 (4th Cir. 1991)). Passive inaction by the alleged wrongdoers does not support a continuing violation. *Id*. The Sixth Circuit recognizes two categories of continuing violations. First, the plaintiff can show prior wrongful activity that continues into the present, or second, the plaintiff can show a longstanding and demonstrable policy of discrimination. *Bowerman v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 646 F.3d 360, 366 (6th Cir. 2011), *cert. denied*, 565 U.S. 1060 (2011). Plaintiff's argument focuses solely on the first category of continuing violations, prior wrongful activity that continues into the present.

The Court has found a dearth of authority addressing the statute of limitations for a challenge such as this. As Judge Crenshaw noted, the claimed injuries are the burdens of complying with the Act, equally a burden for "registered offenders on the first day [the Act] was in effect … [and] on the hundredth or thousandth day it was in effect." *Haslam*, 2017 WL 5187117, at *11. However, the plaintiff must show that the "wrongful conduct" is continuing, in addition to suffering continuing injuries from the Act. *See Eidson*, 510 F.3d at 635. In addition, as Judge Crenshaw also noted, it can be difficult to ascertain what

constitutes the defendant's "wrongful conduct." *Haslam*, 2017 WL 5187117, at *11. Is it the adoption of each amendment to the Act? Or is it the continuing threat of punishment for offenders who do not comply with the ever-expanding restrictions of the Act? "[T]he relevant question is whether the Defendant['s] allegedly wrongful conduct under the [Ex Post Facto] Clause was merely the initial adoption of the challenged restrictions and requirements, or whether the wrongful conduct has continued as long as the Plaintiff[] ha[s] been subject to those restrictions and requirements." *Id*. at 12.

The defendant's argument holds some sway. Plaintiff's complaint details the requirements and restrictions on convicted sex offenders pursuant to the 1994 Act and its subsequent amendments, as well as the adoption of the current Act in 2004 and its subsequent amendments [*see* Doc. 1 at ¶¶ 27—37]. Plaintiff does not allege that he was unaware of each amendment at the time of its adoption or the myriad ways in which he has been impacted by the Act. Thus, defendant credibly argues that plaintiff knew or should have known of his injury and the cause of his injury "at many intervals" between the adoption of the Act and each subsequent amendment [Doc. 10 at p. 8].

In the absence of any controlling Sixth Circuit authority, however, the Court is persuaded that plaintiff has stated a claim of continuing violation. Much like the plaintiffs in the *Haslam* case, the instant Ex Post Facto claim challenges "a punishment that is inflicted on Plaintiff[] every day and will continue to be inflicted every day in the foreseeable future." 2017 WL 5187117 at *13. As Judge Crenshaw noted, plaintiff "face[s] the very real possibility of criminal prosecution by the State if [he] do[es] not conform [his] behavior to the requirements of the Act" and "[i]t is this continuing

imposition of restrictions allegedly violates the Ex Post Facto Clause." *Id*. Indeed, the plaintiff claims he was arrested for failure to comply with the Act's requirements on reporting Internet usernames and social media accounts [Doc. 1 at ¶ 58]. Similarly, the plaintiff easily meets the other two requirements of the continuing violation test because his injuries are continuing and "the cessation of the enforcement of the registration regime would put an end to those harms." *Id*. Thus, the Court concludes that plaintiff's Ex Post Facto claim (Count I) is timely.

Similarly, the Court agrees that Counts II (Due Process – Travel), III (Due Process – Work), IV (First Amendment – Free Speech), VII (Due Process – Criminal Liability Without Actual Knowledge), and VIII (Due Process – Vagueness and Impossibility) are also timely. Each of these claims alleges a particular restriction or potential criminal punishment imposed by the Act to which plaintiff is subject. However, the Court agrees with Judge Crenshaw's analysis that Counts V (Due Process – Retroactivity) and VI (Due Process – Breach of Plea Agreement) are time-barred. *See* 2017 WL 5187117 at *14. These claims do not challenge a punishment imposed by the ongoing requirements of the Act, but are a result of the original imposition of those requirements. Thus, these claims accrued at the time the challenged requirements were initially imposed, more than one year prior to the initiation of this case. Counts V and VI will be dismissed as time-barred.

## V.     Whether the Ex Post Facto Claim States a Claim for Relief

Defendant next argues that Count I (Violation of the Ex Post Facto Clause) fails to state a claim for relief because the Act's registration and reporting requirements do not

impose punishment [Doc. 10 at pp. 11—16].[5]  In support of his position, defendant relies on *Smith v. Doe*, 538 U.S. 84 (2003), *Doe v. Bredesen*, 507 F.3d 998 (6th Cir. 2007), *cert. denied*, 555 U.S. 921 (2008), and *Cutshall v. Sundquist*, 193 F.3d 466 (6th Cir. 1999), *cert. denied*, 529 U.S. 1053 (2000), which considered and rejected Ex Post Facto challenges to sex offender registration laws.

The Constitution provides that "No State shall … pass any … ex post facto Law." U.S. Const. art. I § 10, cl. 1.  An Ex Post Facto law is a "retrospective" law that applies "to events occurring before its enactment" and "disadvantage[s] the offender affected by it … by altering the definition of criminal conduct or increasing the punishment for the crime." *Lynce v. Mathis*, 519 U.S. 433, 441 (1997).  Upon consideration of a motion to dismiss, the Court must determine whether plaintiff's Ex Post Facto challenge to the Act states a plausible claim for relief.  *Iqbal*, 556 U.S. at 678.

In *Smith*, the Supreme Court considered whether the registration and notification requirements of Alaska's sex offender registry law violated the Ex Post Facto Clause.  538 U.S. at 89.  In doing so, the Supreme Court established the framework for considering such challenges by adopting what has been described as an "intent – effects" test: (1) did the legislature intend to impose punishment; and (2) if not, is the statutory scheme "so punitive in either purpose or effect as to negate [the State's] intention to deem it civil."  *Id*. at 92; *Does #1-5 v. Snyder*, 834 F.3d 696, 700 (6th Cir. 2016), *cert. denied*, 138 S. Ct. 55 (2017);

---

[5]Defendant also makes this argument as to Counts V and VI, *i.e.*, that they fail to state a claim for relief because the Act does not impose punishment.  However, in light of the Court's conclusion that Counts V and VI are untimely, *supra*, the Court need not address this argument as to these claims.

*Millard v. Rankin*, 265 F. Supp. 3d 1211, 1223 (D. Colo. 2017); *see Cutshall*, 193 F.3d at 477.

The *Smith* Court noted, "'only the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." 538 U.S. at 92 (quoting *Hudson v. United States*, 522 U.S. 93, 100 (1997)). As set forth in the Act, "in making information about certain offenders available to the public, the general assembly does not intend that the information be used to inflict retribution or additional punishment on those offenders." Tenn. Code Ann. § 40-39-201(b)(8). Plaintiff does not argue that the Act was intended to impose punishment, but that its provisions "can **cumulatively** be punitive" [Doc. 20 at p. 7 (emphasis in original)]. Therefore, in the absence of any evidence or argument to the contrary, the Court accepts for purposes of the instant motion that the Act was not intended to impose punishment. *See Hoffman v. Village of Pleasant Prairie*, 249 F. Supp. 3d 951, 958 (E.D. Wis. 2017) (citing *Smith*, 538 U.S. at 92—93) ("The Court must defer to that statement of intent").

In analyzing the effects of the Act, the Supreme Court has instructed the Court to consider five, non-exhaustive factors:

> (1)    Does the law inflict what has been regarded in our history and traditions as punishment?
>
> (2)    Does it impose an affirmative disability or restraint?
>
> (3)    Does it promote the traditional aims of punishment?
>
> (4)    Does it have a rational connection to a non-punitive purpose?
>
> (5)    Is it excessive with respect to this purpose?

*Snyder*, 834 F.3d at 701 (citing *Smith*, 538 U.S. at 97).  After considering the Alaska statute in light of these factors, the Supreme Court concluded that the respondents could not show, "much less by the clearest proof, that the effects of the law negate Alaska's intention to establish a civil regulatory scheme.  The Act is nonpunitive, and its retroactive application does not violate the *Ex Post Facto* Clause."  *Smith*, 538 U.S. at 105—06.

Defendant Gwyn argues that the same reasoning in *Smith* applies to the Act and notes that the Act's registration and reporting requirements have been upheld against previous Ex Post Facto challenges [Doc. 10 at p. 13 (citing *Bredesen* and *Cutshall*)].  Defendant also argues that plaintiff has not pled any factual allegations that the Act has a punitive effect on him [*Id.* at p. 15].  In response, plaintiff relies on the more recent Sixth Circuit case of *Snyder*, in which the Sixth Circuit held that the Michigan sex offender registry statute was effectively punitive and an unconstitutional Ex Post Facto law.[6]  834 F.3d at 705.

In *Snyder*, the Sixth Circuit reviewed 2006 and 2011 Amendments to Michigan's sex offender registry law, which prohibited registrants from living, working, or "loitering" within 1,000 feet of a school.  834 F.3d at 698.  The law classified registrants into three tiers based on the crime of conviction and required registrants to appear in person to update

---

[6]Defendant argues that the *Snyder* opinion cannot be relied upon because it did not overrule the prior Sixth Circuit decisions *Bredesen* and *Cutshall*, or abrogate the Supreme Court's decision in *Smith* [Doc. 10 at p. 14].  This argument is without merit.  The *Bredesen* and *Cutshall* decisions reviewed and denied challenges to prior versions of Tennessee's sex offender registry law, while *Snyder* reviewed a challenge to Michigan's sex offender registry law.  Thus, *Snyder* did not overrule *Bredesen* and *Cutshall*.  Further, it is elemental that the Sixth Circuit cannot overrule or abrogate a United States Supreme Court decision.

registry information. *Id*. Further, the 2006 and 2011 Amendments applied retroactively to all who were required to register. *Id*. The Sixth Circuit analyzed the Michigan statute pursuant to the "intent – effects" test outlined in *Smith* and concluded that the statute was effectively punitive. *Id*. at 705.

The instant complaint alleges that plaintiff "is subjected to constant supervision by law enforcement officers; required to report in person every calendar quarter and for numerous other reasons on forty-eight hours' notice; banned from living or working in many areas; restricted as to when he can travel; limited in his rights to free speech; publicly labeled as a "violent sexual offender" and "offender against children"; hindered from maintaining normal family relationships; and subjected to a vast array of state-imposed restrictions that encompass virtually every facet of his life" [Doc. 1 at ¶ 3]. As a result of the current Act, plaintiff is listed in a public internet database, along with his home and work addresses and other identifying information [*Id*. at ¶ 21]. The 2014 amendments to the Act made plaintiff subject to lifetime registration requirements [*Id*.]. Plaintiff must report each year in the month of his birthday to an office of the Knox County Sheriff's Office and pay a fee of $150 [*Id*. at ¶ 22]. Plaintiff was arrested for allegedly violating provisions of the amended statute that require him to register all Internet usernames and social media accounts [*Id*. at ¶ 58]. Plaintiff is prohibited from residing or working within 1,000 feet of a school, day care or child care facility, public park, playground, recreation center or public athletic field [*Id*. at ¶¶ 61, 64]. Plaintiff must provide at least 21 days' advance notice before traveling out of the country [*Id*. at ¶ 66]. Plaintiff must provide law enforcement with all electronic mail addresses, instant message addresses, log-in names,

or other identifiers used in Internet communications or postings [*Id.* at ¶ 73]. In short, plaintiff has alleged a number of affirmative disabilities or restraints imposed on him by the Act and some of these restrictions could be considered traditional forms of punishment. On the bare allegations of the complaint, the Court cannot determine whether these restrictions have a rational connection to a non-punitive purpose or if they are excessive with respect to such purpose.

It is worth noting that *Snyder* involved a review of "a handful of opinions, including an opinion following from a Rule 52 bench trial." 834 F.3d at 698. This Court has only the complaint and the pleadings on the instant motion to review. Accordingly, accepting the allegations of the complaint as true, the Court concludes that the plaintiff has alleged a plausible claim that the present version of the Act is so punitive in effect as to violate the Ex Post Facto Clause. *See Doe v. Miami-Dade Cty.*, 846 F.3d 1180, 1185—86 (11th Cir. 2017). The Court does not, however, express any opinion at this time as to the ultimate merits of plaintiff's Ex Post Facto claim.

VI.   **Whether Count II (Violation of the Due Process Clause – Travel) States a Claim for Relief**

Count II of the Complaint alleges that the Act, specifically Tenn. Code Ann. § 40-39-204(h), violates plaintiff's right to travel in violation of the Due Process Clause [Doc. 1 at ¶¶ 66—72, 112—115]. Defendant correctly argues that the travel reporting

requirements of Tenn. Code Ann. § 40-39-204(h) only apply to international travel.[7] Because international travel, as opposed to interstate travel, is not a fundamental constitutional right, defendant argues that Count II does not state a Due Process claim [Doc. 10 at pp. 17—18]. Plaintiff has not responded to this argument.

"Freedom to travel throughout the United States has long been recognized as a basic right under the Constitution." *Attorney General of N.Y. v. Soto-Lopez*, 476 U.S. 898, 901 (1986) (quoting *Dunn v. Blumstein*, 405 U.S. 330, 338 (1972)). "The constitutional right of interstate travel is virtually unqualified… By contrast, the 'right' of international travel has been considered to be no more than an aspect of the 'liberty' protected by the Due Process Clause of the Fifth Amendment. As such this 'right,' the Court has held, can be regulated within the bounds of due process." *Califano v. Aznavorian*, 439 U.S. 170, 176 (1978) (citations omitted); *see Beydoun v. Sessions*, 871 F.3d 459, 467 (6th Cir. 2017) ("the *freedom* to travel outside the United States must be distinguished from the *right* to travel within the United States") (emphasis in original) (quoting *Haig v. Agee*, 453 U.S. 280, 306 (1981)). Thus, "the freedom to travel abroad … is subject to reasonable governmental regulation." *Id*.

The Act's restriction on international travel requires all registrants to provide at least twenty-one (21) days' advance notice before traveling out of the country. The notice period

---

[7]This section provides "[e]ach offender shall report to the designated law enforcement agency at least twenty-one (21) days before traveling out of the country; provided, that offenders who travel out of the country frequently for work or other legitimate purpose, with the written approval of the designated law enforcement agency, and offenders who travel out of the country for emergency situations shall report to the designated law enforcement agency at least twenty-four (24) hours before traveling out of the country." Tenn. Code Ann. § 40-39-204(h).

can be shortened to twenty-four (24) hours' notice for those registrants who travel out of the country frequently for work or other legitimate purpose. Plaintiff has not alleged any specific facts that these regulations have impaired his ability to travel outside of the country or that he has attempted to travel outside of the country. Indeed, the allegations related to this provision of the Act are all couched in hypothetical language: "[i]f Doe travels"; "[d]epending on how long he travels"; "if Doe goes on vacation"; and "the requirement under Tennessee law that Doe register as a sex offender will likely bar him from traveling anywhere else in the world." [Doc. 1 at ¶¶ 68—69, 72]. Plaintiff has presented no allegation or legal argument that the advance notice requirement of Tenn. Code Ann. § 40-39-201(h) is an unreasonable governmental regulation. *See Haslam*, 2017 WL 5187117, at *16 ("Insofar as the Court recognizes a constitutional right to international travel, that right is not so highly protected that it is violated by the passage of a 21-day notification requirement based on the important public purposes underlying the Act").

The complaint also alleges that, *if* he travels, plaintiff must comply with the sex offender laws in other jurisdictions and he *may* have to register as a sex offender in other jurisdictions [*Id*. at ¶68]. Plaintiff further hypothesizes as to the complications he *might* face in trying to comply with the sex offender laws in Florida *if* he were to vacation there [*Id*. at ¶ 69]. First, these allegations are purely speculative and do not allege a plausible claim for relief. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555 ("[f]actual allegations must be enough to raise a right to relief above the speculative level"). Second, as noted above, the cited provision of the Act only concerns international travel and plaintiff has presented no allegation or legal argument as to how a provision on international travel

could impair his right to interstate travel. Further, plaintiff has presented no allegation or legal argument as to how this defendant can be liable for plaintiff's inability to comply with the laws of other states.

Finally, plaintiff complains that a recent federal law, Int'l Megan's Law to Prevent Child Exploitation & Other Sexual Crimes Through Advanced Notification of traveling Sex Offenders, Pub. L. No. 114-119, 130 Stat. 15 (2016), requires registered offenders to report information on intended international travel and authorizes the United States government to notify foreign countries when a registered offender is traveling to that country [*Id*. at ¶ 71]. Thus, "[i]t is almost certain" he will be prohibited from entering another country and he will likely be barred from traveling anywhere else in the world [*Id*.]. Again, this claim is purely speculative. And again, plaintiff has presented no allegation or legal argument as to how this defendant, responsible for enforcing a Tennessee statute, can be liable for the effects of a federal statute.

In short, the Court agrees that plaintiff has failed to state a plausible claim for violation of his Due Process rights as to travel. Count II will be dismissed.

## VII. Whether Count III (Violation of Due Process – Work) States a Claim for Relief

Defendant argues that Count III, which alleges that the Act substantially interferes with his ability to work by creating a "wholesale barrier to employment" without individualized consideration, fails to state a claim for relief [Doc. 10 at pp. 19—20]. Defendant correctly notes that plaintiff has not alleged an inability to find employment and, in fact, plaintiff claims he has been employed as a jeweler since his conviction [*see* Doc. 1

at ¶ 18].  Further, defendant argues that plaintiff cannot assert a right to private employment and he has not asserted any effort to obtain government employment.  Plaintiff has not responded to this argument.

The complaint alleges that the Exclusion Zones in Tenn. Code Ann. § 40-39-211(a)(1) bar plaintiff from working within 1,000 feet of any "public school, private or parochial school, licensed day care center, other child care facility, public park, playground, recreation center or public athletic field available for use by the general public" [Doc. 1 at ¶ 64].[8]  Plaintiff complains that this makes "a substantial number of employments unavailable as a matter of law" [*Id*.].  However, as defendant argues, plaintiff alleges that he has been productively employed as a jeweler since his conviction [*Id*. at ¶ 18] and has not alleged any job which he has sought and been denied.  As defendant notes, there is no general right to private employment and plaintiff has not alleged a termination of government employment.  *See Cutshall*, 193 F.3d at 479.  Plaintiff has simply not alleged a plausible claim for relief that the Act has violated his Due Process rights with respect to employment.  Count III will be dismissed.


## VIII.  Whether Count IV States a Claim for Relief for Violation of Plaintiff's First Amendment Rights

---

[8]Pursuant to 2018 Tenn. Pub. Acts 643 and effective July 1, 2018, the Act now defines "playground" as "any indoor or outdoor facility that is intended for recreation of children and owned by the state, a local government, or a not-for-profit organization, and includes any parking lot appurtenant to the indoor or outdoor facility."

In Count IV, plaintiff claims that the Act violates his First Amendment rights to free speech because he is required to report information about his Internet accounts and activity [Doc. 1 at ¶¶ 121—123]. The complaint alleges that plaintiff "is concerned about using the Internet" because it is unclear which online accounts he must report and he "is afraid" that his Internet use will be monitored [Doc. 1 at ¶¶ 74—75]. Because he must report all of his email addresses or usernames, plaintiff cannot engage in anonymous political speech on the Internet [*Id.* at ¶ 76]. Further, plaintiff claims the Act violates his right to attend traditionally public forums because he cannot attend a public meeting at a public school or participate in a public assembly if a child is present [*Id.* at ¶¶ 76—77, 124].

Defendant argues that plaintiff has failed to state a First Amendment claim because the Act does not prohibit, restrict, or seek to suppress the content of his speech [Doc. 10 at pp. 21—22]. Further, the Act does not require plaintiff to disclose the content of his Internet communications, only that he disclose any online identities. Defendant also argues that the restriction on plaintiff's presence in public parks only applies when children are present [*Id.*].

In response, plaintiff relies on *Doe v. Harris*, 772 F.3d 563 (9th Cir. 2014), in which a similar California statute was held to violate the First Amendment [Doc. 20 at pp. 9—10]. Plaintiff summarily argues that the same conclusions should apply to the instant claim.

Tenn. Code Ann. § 40-39-203(i)(17) requires registrants to provide the TBI with "[a] complete listing of the offender's electronic mail address information, including usernames, any social media accounts the offender uses or intends to use, instant message, other Internet communication platforms or devices, and the offender's username, screen

name, or other method by which the offender accesses these accounts or web sites."
Registrants must report any changes to such information within three (3) days. Tenn. Code
Ann. § 40-39-203(a)(7). Relevant to Count IV, the Act prohibits registrants from being on
the premises or grounds of a public school, public park, or recreation center "when the
offender has reason to believe children under eighteen (18) years of age are present." Tenn.
Code Ann. § 40-39-211(d)(1)(A).

Defendant is correct that the reporting requirements of the Act are content-neutral,
that is, they do not restrict certain viewpoints or modes of expression. *See Turner
Broadcasting Sys., Inc. v. F.C.C.*, 512 U.S. 622, 642 (1994) ("regulations that are unrelated
to the content of speech are subject to an intermediate level of scrutiny"); *Planet Aid v.
City of St. Johns, MI*, 782 F.3d 318, 326 (6th Cir. 2015). However, the requirements of the
Act are broad and conceivably reach any form of Internet communication, whether
personal, political, commercial, or work-related. Assuming for purposes of the instant
motion that the Act's requirements on Internet identifiers are subject to an intermediate
level of scrutiny, the restrictions must be "narrowly tailored to serve a significant
governmental interest, and leave open ample alternative channels for communication of
the information." *Crookston v. Johnson*, 841 F.3d 396, 403 (6th Cir. 2016).

The Court is simply unable to resolve this issue at this time. It is worth noting that
the Ninth Circuit had the benefit of reviewing a lower court ruling on a motion for
preliminary injunction following briefing and a hearing. *Harris*, 772 F.3d at 569. Faced
only with the bare allegations of the complaint and the Act's language, the Court is unable
to determine how much of a burden the Act imposes on plaintiff's rights to free speech.

*See Haslam*, 2017 WL 5187117, at *18; *see also Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989) ("[g]overnment may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals"). Accordingly, the Court will not dismiss Count IV.

IX.   **Whether Counts VII (Due Process -- Criminal Liability Without Actual Knowledge) and VIII (Due Process – Vagueness and Impossibility) State a Claim For Relief**

Count VII claims that the Act violates Due Process because it imposes criminal liability without requiring proof of actual knowledge of the duty to comply with the Act, specifically the Act's provisions on working, loitering, or residing within an Exclusion Zone [Doc. 1 at ¶¶ 131—132].  Count VIII claims that the Act violates Due Process because it is unconstitutionally vague and impossible to comply with, also specifically focusing on the provisions regarding working, loitering, or residing within an Exclusion Zone [*Id*. at ¶¶ 133—136].

Defendant argues that the challenged provisions of the Act are not so vague that a person of ordinary intelligence can understand what conduct is prohibited and do not lead to arbitrary enforcement [Doc. 10 at pp. 22—26].  Defendant contends that the Exclusion Zone provisions of the Act are specific in describing the prohibited conduct and do not punish passive behavior as plaintiff claims [*Id* at pp. 24—25].  Defendant also notes that these provisions of the Act are not so impossibly vague because plaintiff has complied with them for many years [*Id*. at p. 26].  Relying on *Doe v. Cooper*, 842 F.3d 833 (4th Cir.

2016), plaintiff contends that the Exclusion Zone provisions are so vague as to violate Due Process [Doc. 20 at pp. 10—11].

The parties seem to agree that the standard of review for these claims is set out in *Johnson v. United States*, 135 S. Ct. 2552, 2556 (2015). That is, whether these provisions of the Act fail to give a person of ordinary intelligence fair notice of the conduct punished or they are so standardless that they invite arbitrary enforcement. *Id*. However, as Judge Crenshaw concluded in *Haslam*, this argument is simply too fact-dependent to be resolved at this stage. *See Haslam*, 2017 WL5187117 at *18-19. Plaintiff has not yet presented any evidence that these provisions of the Act have led to arbitrary enforcement. Similarly, the Court cannot determine whether the Exclusion Zone restrictions are impossible to comply with in the absence of a factual record. *Id*. at 19 ("Without a full picture of how extensive those Zones are and how greatly they burden a registered offender's ability to engage in ordinary, unavoidable life activities, the Court cannot rule on [this claim]"). Accordingly, the Court will not dismiss Count VII or VIII.

## X.      Conclusion

For the reasons set forth herein, the defendant's motion to dismiss [Doc. 9] will be **GRANTED in part and DENIED in part**. An appropriate order will be entered.


     s/ Thomas W. Phillips
     SENIOR UNITED STATES DISTRICT JUDGE