# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

| | | |
|---|---|---|
| **JOHN DOE,** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| **v.** | ) | **No. 3:17-CV-504** |
| | ) | **REEVES/GUYTON** |
| **DAVID B. RAUSCH,** | ) | |
| ***Director of the Tennessee Bureau of*** | ) | |
| ***Investigation in his official capacity*** | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

## MEMORANDUM OPINION

This civil action presents a constitutional challenge to the Tennessee Sexual Offender and Violent Sexual Offender Registration and Tracking Act of 2004 ("SORVTA"), Tenn. Code Ann. §§ 40-39-201–218 (2018). Prior to SORVTA's 2004 enactment, Plaintiff was convicted of seven sexual offenses involving three different minor victims. SORVTA, both as enacted and as amended, retroactively requires that Plaintiff comply with its restrictions and reporting obligations for the remainder of Plaintiff's life. Before the Court are cross motions for summary judgment filed by Plaintiff John Doe [Doc. 36] and Defendant David B. Rausch,[1] Director of the Tennessee Bureau of Investigation ("TBI") [Doc. 38]. For the reasons that follow, Plaintiff's motion for summary judgment [Doc. 36] will be granted in part and denied in part, and Defendant's motion for summary judgment [Doc. 38] will be granted in part and denied in part.

---

[1] During this litigation, David B. Rausch became the new Director of the Tennessee Bureau of Investigation ("TBI") and was "automatically substituted" as the proper party Defendant. Fed. R. Civ. P. 25(d).

# I. Background

## A. Statutory Background

### 1. Tennessee's Sexual Offender Registration and Monitoring Act of 1994 ("SORMA")

SORMA was enacted on May 10, 1994. SORMA required the Tennessee Bureau of Investigation ("TBI") to "establish, maintain, and update a centralized record system of sexual offender registration and verification information." 1994 Tenn. Pub. Acts ch. 976, § 7(a). SORMA defined a "sexual offender" to be an individual convicted of one of a number of enumerated offenses under Tennessee criminal law or another state's equivalent statute.

Under SORMA, required registrants were compelled to register within ten days of release without supervision from probation, parole, or incarceration, *id.* § 4, and TBI was directed to send verification and monitoring forms to the registrant every ninety days. *Id.* § 5. The registrant then had ten days from receipt to complete and return the form. *Id.* Registrants were also required to complete a new form within ten days of any change of residence or entry into a municipality or county for temporary residence or domicile. *Id.* § 4. All registration and reporting under SORMA involved paper submissions and the information was designated as confidential, with the exception of "information deemed necessary to protect the public concerning a specific sexual offender." *Id.* §§ 4, 7(c). Ten years after release from supervision, a registrant could then petition a court for relief from SORMA's registration requirements. *Id.* § 8(a). The court would consider several factors, including the age of the offender's victims and the behavior of the offender since his

2

offense, and would grant the petition if it found the registrant had complied with SORMA, was rehabilitated, and did not pose a threat to public safety. *Id.* § 8(c). TBI would then expunge the registrant's data from its registry. *Id.* Violations of SORMA were misdemeanor offenses for the purposes of punishment. *Id.* § 9.

SORMA was frequently amended, expanding SORMA's scope and requirements and contracting registrants' level of confidentiality. *See Doe v. Haslam*, No. 3:16-CV-02862, 2017 WL 5187117, at *2 (M.D. Tenn. Nov. 9, 2017) (listing amendments to SORMA). Notably, SORMA was amended in 2000 to require lifetime registration for registrants that had been convicted of actual or attempted aggravated rape, rape, aggravated sexual battery, or rape of a child. 2000 Tenn. Pub. Acts ch. 997, §§ 1–2.

### 2. Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification, and Tracking Act of 2004 ("SORVTA")

On June 8, 2004, SORMA was repealed and SORVTA was enacted. SORVTA replaced the framework for sex offender registration and restrictions in Tennessee. 2004 Tenn. Pub. Acts ch. 921, §§ 1–6. While much of the former system continued, SORVTA created a new classification of registrants and a new series of requirements, depending on a registrant's classification. Initially, "sexual offenders" under SORVTA included individuals convicted of "sexual battery, statutory rape, aggravated prostitution, sexual exploitation of a minor, incest, indecent exposure (upon the third such conviction), . . . [or] attempt, solicitation, conspiracy, criminal responsibility, facilitation, or being an accessory after the fact" of any of the aforementioned offenses. *Haslam*, No. 3:16-CV-02862, 2017 WL 5187117, at *2 (citing *id.* § 1(16)). However, building on SORMA's 2000 amendment,

the "violent sexual offenders" classification grew to include individuals convicted of "rape, aggravated rape, rape of a child, aggravated sexual battery, aggravated or especially aggravated sexual exploitation of a minor, aggravated or especially aggravated kidnapping of a minor other than the offender's own child, sexual battery by an authority figure, solicitation of a minor, [or] attempt, solicitation, or conspiracy" involving any of these aforementioned offenses. *Id.* at *2 (citing 2004 Tenn. Pub. Acts ch. 921, § 1(24)).

SORVTA requires "violent sexual offender" registrants to verify their information quarterly, Tenn. Code Ann. § 40-39-204(c), report to designated law enforcement agencies in person, *Id.* § 40-39-203(a), 204(b), and report certain triggering events, such as changes in employment or residence, within forty-eight hours. *Id.* § 203(a)(3)–(6). More information must be reported than SORMA required, *id.* § 203(h), and more administrative fees must be paid while a registrant remains on the registry. *Id.* § 204(b)(1) and (c). Only select "sexual offenders" may petition TBI, rather than a court, for removal after ten years, with a right of appeal to a chancery court. *Id.* § 207(b), (g). Violations of SORVTA are felony offenses. *Id.* § 208(b).

As with SORMA, SORVTA has been repeatedly amended to expand its scope, restrictions, and the public availability of registrant information. *See Haslam*, No. 3:16-CV-02862, 2017 WL 5187117, at *2 (listing amendments to SORVTA as of 2017); *Ward v. State*, 315 S.W.3d 461, 475 (Tenn. 2010) (listing amendments to SORVTA as of 2010).

### 3. 2014 Amendment to SORVTA

In 2014, the General Assembly of Tennessee again amended SORVTA to create a new offender classification—"offender against children." 2014 Tenn. Pub. Acts ch. 770,

§§ 1, 2.  Registrants whose victims were twelve years or younger at the time of the offense became subject to lifetime registration, regardless of whether the underlying offense was categorized as "violent."  *Id.*; Tenn. Code. Ann. § 40-39-207(g)(1)(C).  Further, registrants could no longer live or work within one thousand feet of schools, day care centers, public parks, playgrounds, recreation centers, or public athletic fields available for use by the general public. 2014 Tenn. Pub. Acts ch. 992, § 1.  Further still, local governments were authorized to establish "community notification systems" to notify residents, schools, and childcare facilities when a registrant resides within a certain distance from those locations and charge registrants a yearly fifty-dollar fee to pay for the system, in addition to the registry fee.  2014 Tenn. Pub. Acts ch. 751, § 1.

### B.  Plaintiff's Background

The parties do not dispute the material facts in this case.  In 1999, Plaintiff pled guilty to seven counts of attempted aggravated sexual battery involving three minor victims in Anderson County, Tennessee. [Doc. 41, PageID # 393–403];[2] *see* Tenn. Code Ann. §§ 39-12-101, 39-13-504.  At the same time, a judgment of *nolle prosequi* was entered regarding other charges brought against Plaintiff for the stated reason that he "entered a guilty plea to other counts of the indictment, and this plea will prevent the young victims from testifying at a jury trial." [*Id.*].  Due to his guilty pleas and conviction, Plaintiff served five and a half years imprisonment in the custody of the Tennessee Department of

---

[2] Transcripts of Doe's deposition, along with referenced exhibits, have been filed by both parties in this case in different formats.  For ease of reference, the Court will cite to Defendant's submission, Doc. 41, and will reference the PageID #, rather than the transcript page number.  The Court will follow the same format for the deposition of Ms. Doe, Doc. 42.

Corrections. [Doc. 41, Page ID # 273]. At the time of his conviction, Plaintiff was obligated through SORMA to register as a sex offender within ten days of his release from prison. *See* 1994 Tenn. Pub. Acts ch. 976, § 4. After a period of ten years of compliance, Plaintiff could then petition a court to be removed from the registry. *Id.* at § 8(c). However, on June 30, 2000, SORMA was amended to require those that committed a "sexually violent offense" to register "for the life of that person" and included attempted aggravated sexual battery in the enumerated list of sexually violent offenses. 2000 Tenn. Pub. Acts ch. 997, §§ 1–2 (creating former Tenn. Code Ann. §§ 40-39-102(4)(C)&(E), -107(g)(1)(B) (repealed 2004)).

Prior to Plaintiff's completion of his sentence, the Tennessee General Assembly repealed SORMA and replaced it with SORVTA. *See* 2004 Tenn. Pub. Acts ch. 921, § 1. Under SORVTA's list of enumerated offenses, Plaintiff qualified as a "violent sexual offender." [Doc. 1, ¶ 21]; 2004 Tenn. Pub. Acts ch. 921, § 1 (creating Tenn. Code Ann. §§ 40-39-202(23)(A), (24)(C)&(L) (2004)). According to SORVTA's original language, this obligated Plaintiff to "comply with the registration, verification, and tracking requirements for [] life." *See* 2004 Tenn. Pub. Acts ch. 921, § 1 (creating Tenn. Code. Ann. § 40-39-207(g)(1)(B) (2004)).

After his release, Plaintiff registered through Tennessee's Sex Offender Registry ("SOR"), as required by SORVTA. As SORVTA's reporting requirements and restrictions have grown by accretion, so have Plaintiff's obligations.[3]

---

[3] By the Court's estimation, at least two dozen amendments to SORVTA have been passed by the General Assembly since its enactment.

Those growing obligations have presented numerous challenges for Plaintiff. Though Plaintiff returned to the home he purchased with his wife prior to his conviction, SORVTA's "exclusion zones"—a one-thousand-foot buffer around schools, day care centers, parks, playgrounds, recreation centers and more where Plaintiff cannot knowingly reside, work, or "stand [or] sit idly"—have prevented Plaintiff from finding another home that they can afford to purchase and meets their criteria. [Doc. 41, PageID # 271, 276–80, 292, 350]; *see* Tenn. Code Ann. § 40-39-211. A jeweler by trade, Plaintiff has also been hampered in his ability to work directly inside several jewelry shops due to the exclusion zones and has been restrained to doing contract work from his own home. [Doc. 41, PageID # 269, 280–90, 293–95]. Though his work as a jeweler was lucrative prior to his pre-conviction move to Tennessee, his income has floated between six hundred and eight thousand dollars a year in the time since his release. [*Id.* at 286–87]. SORVTA's prohibitions and restrictions have also led Plaintiff to avoid certain recreational activities, such as having picnics at the park with his wife, going to public libraries, and attending a hockey game. [*Id.* at 302, 303, 317].

Plaintiff has long been an active and prolific internet user for a variety of typical political informational, and recreational purposes. But Plaintiff must report his "electronic mail address information, any instant message, chat or other internet communication name or identity information that the person uses or intends to use" and report any changes to those within three days. [*Id.* at 304–32]. In 2017, Plaintiff was arrested and charged with violating SORVTA's reporting requirements and perjury for failing to report a Facebook account that he had opened in 2009. [*Id.* at 301–02]. Though adamant that he had reported

7

the account, Plaintiff pleaded guilty to attempted violation of SORVTA and attempted perjury, both misdemeanor offenses, avoiding a prospective twelve-year felony sentence. [*Id.* at 301]. Plaintiff only used Facebook for "[t]alking to people, meeting people, finding old friends, [and] talk[ing] about politics," and the record does not indicate any nefarious uses by Plaintiff. Nevertheless, Plaintiff no longer has a Facebook account since that incident. [*Id.* at 321].

This incident has prompted Plaintiff to print out screenshots containing any changes to or creation of internet identifiers, report that information in person, and collect a signed acknowledgement from his reporting officer to ensure that he has documentation of this reporting, even though not required to do so statutorily. [*Id.* at 311–12]. During one such reporting excursion, Plaintiff asked his officer "Are you guys in my computer?" to which the officer responded, "Well, you wouldn't know if we were." [*Id.* at 307–08]. Plaintiff took this as a threat and concluded that "they are looking at my political speech" since "the police can see everything that I post." [*Id.*].

On November 22, 2017, Plaintiff filed this case pursuant to 42 U.S.C. § 1983, claiming that SORVTA's retroactive lifetime registration requirements violate Ex Post Facto Clause and that various portions of SORVTA violate the Due Process Clause of the Fourteenth Amendment, including the First Amendment as incorporated. [Doc. 1]. Plaintiff seeks declaratory and injunctive relief. [*Id.*].

In May 2019, both parties filed motions for summary judgment in quick succession. [Doc. 36, 38]. Following responses and replies, those cross-motions became ripe for review, and the parties agreed that all legal questions in this case were submitted for full

disposition. [Doc. 57]. On March 2, 2020, this matter and these motions were reassigned to the undersigned for resolution. [Doc. 60].

## II.    Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Moore v. Philip Morris Cos*., 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). "Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp*., 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Id.* at 250. The Court does not weigh the evidence or determine the truth

of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

The standards upon which a court evaluates motions for summary judgment do not change when, as here, both parties seek to resolve the case through the vehicle of cross-motions for summary judgment. "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts." *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1999) (citations omitted). Instead, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.*

## III. Analysis

Plaintiff attacks the constitutionality of SORVTA under the Ex Post Facto Clause of the United States Constitution and the Due Process Clause of the Fourteenth Amendment. Specifically, Plaintiff argues that (A) the retroactive application of SORVTA's requirements and restrictions for life violates the Ex Post Facto Clause, as applied; (B) facially and as applied, SORVTA violates the First Amendment; (C) certain portions of SORVTA impose criminal liability without actual knowledge and are

10

unconstitutionally vague or otherwise demand impossible compliance, all in violation of the Due Process Clause of the Fourteenth Amendment. Each will be addressed in turn.

### A. Ex Post Facto Clause

#### 1. Precedent and Authority

Looking first to the legal landscape, the Court notes that the Supreme Court has upheld the retroactive application of sex offender registries. *See Smith v. Doe*, 538 U.S. 84 (2003). Likewise, the Sixth Circuit has previously upheld Tennessee's sex offender registry laws against similar challenges. *See, e.g., Doe v. Bredesen*, 507 F.3d 998, 1001 (6th Cir. 2007), *cert. denied*, 555 U.S. 921 (2008) (upholding SORVTA); *Cutshall v. Sundquist*, 193 F.3d 466, 474 (6th Cir. 1999), *cert. denied*, 529 U.S. 1053 (2000) (upholding SORMA).

However, two key changes have occurred. First, SORVTA has grown in layers as the Tennessee General Assembly has expanded the scope of its restrictions and the content of its reporting requirements. Second, the contours of Sixth Circuit precedent have changed in the intervening years since *Cutshall* and *Bredesen*.

#### a. SORVTA Has Expanded

Though the Sixth Circuit has upheld Tennessee's sex offender registry laws in the past, including the 2004 enactment of SORVTA, the Tennessee General Assembly has continued to tinker with SORVTA, minimizing its resemblance to the statutes that were before Sixth Circuit at the time. *See, e.g.*, *Bredesen*, 507 F.3d at 1001 (plaintiff challenged a provision of the 2004 Tennessee Serious and Violent Sex Offender Monitoring Pilot Project Act, not at issue in this case, authorizing the TBI to require certain offenders to

11

wear a global positioning system ("GPS") monitor at all times); *Cutshall*, 193 F.3d at 474

("Cutshall need only notify the TBI where he lives, where he works, and other basic data.

He is free to live where he chooses, come and go as he pleases, and seek any employment

he wishes."); *see also Ward v. State*, 315 S.W.3d 461, 475 (Tenn. 2010) (noting the

frequency with which SORVTA has been amended and expanded).

For example, since 2007 when *Bredesen* was decided, SORVTA's residential and

employment exclusion zones now also surround public parks, playgrounds, recreation

centers, and public athletic fields used by the general public. *See* 2006 Tenn. Pub. Acts ch.

890, § 20. Likewise, registrants may no longer knowingly "[s]tand, sit idly, . . . or remain"

within one thousand feet of the enumerated locations when minors are present. *See* 2009

Tenn. Pub. Acts ch. 597, § 1. Public libraries may now prohibit registrants from library

premises if a public library board or library administrator determines that the restriction is

reasonable. *See* 2011 Tenn. Pub. Acts ch. 287, § 1.

Registrants are now required to also report "[a]ny electronic mail address

information, any instant message, chat or other Internet communication name or identity

information" and report any changes to those internet identifiers within three days. *See*

2008 Tenn. Pub. Acts ch. 979, §§ 1–3, ch. 1164, §§ 5–6, 15. Registrants are now required

to obtain and always possess a driver's license or state identification card, 2008 Tenn. Pub.

Acts ch. 1143, § 1, that identifies them as a "sexual offender" or "violent sexual offender."

2011 Tenn. Pub. Acts ch. 483, § 21. Local governments may now establish "community

notification systems" to notify residences, schools, and child-care facilities when a

registrant resides or intends to reside within a certain distance of those locations. *See* 2014

Tenn. Pub. Acts ch. 751, § 1. This notification may be accomplished by a flyer delivered to all legal residences in the specified area, publication in the local newspaper, or internet postings. *Id.*

In short, SORVTA's restrictions have expanded, the amount of information that must be reported has expanded, and the public's access to that information has expanded.

### b. The Landscape of Sixth Circuit Precedent Has Changed

Likewise, though the Sixth Circuit has upheld SORVTA and its predecessor in the face of similar constitutional challenges, it has since found Michigan's parallel scheme to be unconstitutional as applied to a select group of plaintiffs, therein clarifying the analysis that must be employed when addressing these types of claims. *See Does v. Snyder*, 834 F.3d 696, 699 (6th Cir. 2016), *cert. denied*, 138 S. Ct. 55 (2017). Despite Defendant's argument to the contrary, *Snyder* is binding precedent upon this Court. *Compare Doe v. Rausch*, 382 F. Supp. 3d 783, 795 (E.D. Tenn. 2019) (Defendant also argues that *Snyder* is not controlling . . . , but this Court cannot summarily disregard binding precedent from the Sixth Circuit."), *and Haslam*, 2017 WL 5187117, at *20 ("*Snyder* . . . is the law of this Circuit and is binding on the Court."), *with Clark v. Gwyn*, No. M2018-00655-COA-R3-CV, 2019 WL 1568666, at *7 (Tenn. Ct. App. Apr. 11, 2019) (Tennessee Court of Appeals is "not bound" by the Sixth Circuit's ruling in Snyder; "it is merely persuasive authority."). Likewise, while *Snyder* did not overrule *Cutshall* and *Bredesen*, it did clarify and cabin those holdings such that the present case must evaluated through *Snyder's* lens. *See Haslam*, No. 3:16-CV-02862, 2017 WL 5187117, at *19 (finding that *Snyder* "has clarified the appropriate analysis for such claims to a degree hat, though not strictly overruling

*Cutshall* and *Bredesen*, significantly undermines those cases' applicability to a challenge"

to SORVTA); *see also Rausch*, 382 F. Supp. 3d at 794 (Phillips, J.) (evaluating a

constitutional attack on SORVTA through the lens of *Snyder*); *Doe v. Gwyn*, No. 3:17-CV-

504, 2018 WL 1957788, at *7 (E.D. Tenn. Apr. 25, 2018) (Phillips, J.) (denying

Defendant's motion to dismiss Plaintiff's ex post facto claim on the basis of *Snyder* in this

case).

In sum, SORVTA, in its current form, is no longer of the same character of the

iterations that were upheld by the Sixth Circuit.  Likewise, Sixth Circuit precedent since

*Cutshall* and *Bredesen* has clarified the analysis this Court's must apply in the present case.

### 2.  Does the Retroactive Application of SORVTA violate the Ex Post Facto Clause of the United States Constitution as Applied to Plaintiff?

Turning to the claims at hand, Plaintiff first attacks the retroactive application of

SORVTA under the Ex Post Facto Clause of the United States Constitution.  Plaintiff

contends that, as applied to him, the 2014 Amendment unconstitutionally compelled his

lifetime compliance with SORVTA's restrictions and requirements.  Plaintiff asks for a

declaration that SORVTA *in toto* is unconstitutional on ex post facto grounds, along with

injunctive relief.

Apart from challenging the precedential value of *Snyder*, Defendant contends that

SORVTA's requirements do not have a punitive effect as applied to Plaintiff.  Defendant

isolates specific requirements imposed by SORVTA and argues that each fail to have a

punitive effect.

At the outset, the Court notes that there is a looming, unaddressed question regarding Plaintiff's motion for summary judgment. First, Plaintiff is either unclear or incorrect about the statutory source of his lifetime obligation under SORVTA. As Plaintiff's pleadings have noted, SORVTA classified Plaintiff as a "violent sexual offender" upon its enactment in 2004. [Doc. 1, p. 19, ¶ 45]. This 2004 retroactive classification was made due to his seven guilty pleas to attempted aggravated sexual assault of three different minors, which fell within the enumerated offenses specified for the classification. *See* 2004 Tenn. Pub. Acts ch. 921, § 1 (enacting Tenn. Code Ann. § 40-39-202(24)(C)&(L) (2004)). From SORVTA's inception, "violent sexual offenders," such as Plaintiff, were subject to SORVTA's requirements for life. *See* 2004 Tenn. Pub. Acts ch. 921, § 1 (creating former Tenn. Code Ann. § 40-39-207(g)(1)(B) (2004)); [Doc. 1, p. 11]. The 2014 Amendment added another classification—"offender against children"—for offenders whose victims are twelve years of age or less. *See* 2014 Tenn. Pub. Act ch. 770, § 2 (creating Tenn. Code Ann. §§ 40-39-202(10); 207(g)(1)(C) (2014)). The respective ages of Plaintiff's three victims at the time of Plaintiff's offense meant that, as of the 2014 Amendment, Plaintiff also fell into the "offender against children" classification. *See id.* Consequently, the 2014 Amendment created a duplicative requirement that Plaintiff register for life. *See* Tenn. Code Ann. § 40-39-207(g)(2)(C).[4] Though previously acknowledging this redundant lifetime obligation, [Doc. 1, p. 19, ¶ 45], Plaintiff's present

---

[4] SORVTA does not indicate, nor has either party provided a legal basis for finding, that the classifications identified in Tenn. Code Ann. § 40-39-207(g)(2) overlap or that a registrant's classification is subsumed into the "offender against children" classification created by the 2014 Amendment, if applicable. In other words, the parties appear to assume, without an articulable basis, that the 2014 Amendment somehow precludes or overrides any previous classification. The Court does not adopt this assumption. Indeed, the public SOR classifies Plaintiff as "violent against children."

motion only attacks the second source of his lifetime obligation under SORVTA—the 2014 Amendment. [Doc. 37, p. 5]. Thus, the question: Would a finding that the retroactive lifetime obligation created by the 2014 Amendment violated the Ex Post Facto Clause include the 2004 lifetime obligation in its sweep? Stated differently, are both lifetime obligations inherently intertwined? Fortunately for Plaintiff, this question is not dispositive because Defendant's cross motion for summary judgment brings the full scope Plaintiff's claim before the Court. [Doc. 39, p. 6]. Consequently, the Court's ex post facto analysis will encompass both retroactive lifetime obligations—the 2004 "violent sexual offender" obligation and the 2014 "offender against children" obligation—in this as-applied challenge, regardless of whether they are conceptually distinct or intertwined.

Turning to the law at hand, the Constitution provides that "No State shall . . . pass any . . . ex post facto Law." U.S. Const. art. I § 10, cl. 1. An ex post facto law is a "retrospective" law that applies "to events occurring before its enactment" and "disadvantage[s] the offender affected by it . . . by altering the definition of criminal conduct or increasing the punishment for the crime." *Lynce v. Mathis*, 519 U.S. 433, 441 (1997); *see Cutshall*, 193 F.3d at 476 ("[t]he clause is designed to protect against legislative abuses and to provide fair notice of the consequences of criminal actions"). The Constitution "does not bar *all* retroactive lawmaking, but only retroactive punishment." *Snyder*, 834 F.3d at 699. Relevant to the instant challenge, "[a] statute is enforced retroactively if it governs conduct that preceded the statute's enactment." *Shaw v. Patton*, 823 F.3d 556, 560 (10th Cir. 2016) (citing *Stogner v. California*, 539 U.S. 607, 612–13 (2003)).

The Court begins its analysis with the Supreme Court's decision in *Smith v. Doe*, 538 U.S. 84 (2003). *See Rausch*, 382 F. Supp. 3d at 793. In *Smith*, the Court established an "intents-effects" test when weighing challenges to sex offender registry laws under the Ex Post Facto Clause. 538 U.S. at 89. Under the "intents-effects" test, the Court asks: (1) did the legislature intend to impose punishment; and (2) if not, is the statutory scheme "so punitive in either purpose or effect as to negate [the State's] intention to deem it civil." *Id.* at 92; *Snyder*, 834 F.3d at 700; *Millard v. Rankin*, 265 F.Supp.3d 1211, 1223 (D. Colo. 2017); *see Cutshall*, 193 F.3d at 477.

Here, the parties agree that the "intent-effects" analysis is appropriate framework to evaluate the present motions. Likewise, the parties appear to agree that the Tennessee General Assembly did not intend for SORVTA or the 2014 Amendment to be punitive. *See* Tenn. Code Ann. § 40-39-201(b)(8) ("in making information about certain offenders available to the public, the general assembly does not intend that the information be used to inflict retribution or additional punishment on those offenders."); *Ward v. State*, 315 S.W.3d 461, 470 (Tenn. 2010) ("[t]he plain language of this statute expresses a nonpunitive intent to protect the public"). Consequently, "'only the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Smith*, 538 U.S. at 92 (quoting *Hudson v. United States*, 522 U.S. 93, 100 (1997)). Because this is an as-applied challenge, the Court's constitutional inquiry is limited to Plaintiff's particular situation and circumstances. *See Reno v. Flores*, 507 U.S. 292, 300 (1993) (as-applied challenge is limited to review of how a statute has been "applied in a particular instance"); *see also Women's Medical Prof. Corp. v. Voinovich*,

130 F.3d 187, 193 (6th Cir. 1997), *cert. denied*, 523 U.S. 1036 (1998).  Courts look to five

non-dispositive guideposts when evaluating the actual effects of a statute:

> (1) Does the law inflict what has been regarded in our history and traditions as punishment?
> (2) Does it impose an affirmative disability or restraint?
> (3) Does it promote the traditional aims of punishment?
> (4) Does it have a rational connection to a non-punitive purpose?
> (5) Is it excessive with respect to this purpose?

*Snyder*, 834 F.3d at 701 (citing *Smith*, 538 U.S. at 97).  The Court will weigh each factor

in turn.

### a. Does SORVTA inflict upon Plaintiff what has been regarded in our history and traditions as punishment?

Plaintiff argues that he has been retroactively reclassified "from a 'sex offender' to

a 'violent sex offender' based on nothing more than the age of the victim and not an

individualized assessment of [his] risk of future violations." [Doc. 37, pp. 8–9].[5]  Plaintiff

further argues that his reclassifications carried "after the fact" enhancements of

punishment, but he entered into a plea deal with the knowledge that he would be subject to

registry requirements for ten years under SORMA. [*Id.*].  Instead, subsequent changes

placed upon him a lifetime of "very burdensome" restrictions [*Id.*].  Lastly, Plaintiff

suggests that he has experienced specific instances of shaming and banishment as a result

of his lifetime placement on the registry as a "violent sex offender."

Defendant contends that the Sixth Circuit's holdings in *Bredesen* and *Cutshall*

foreclose a finding that the Ex Post Facto Clause is violated as applied to Plaintiff.  Further,

---

[5] Again, Plaintiff conflates his dual classifications and attributes them both to the 2014 Amendment.

Defendant states that, unlike in *Snyder* where the Sixth Circuit concluded that Michigan's SORA resembled colonial-era shaming, Tennessee's SORVTA provides no provision enabling the public to directly confront offenders subject to its provisions [Doc. 47, p. 11 (citing *Snyder*, 834 F.3d at 702; *Smith*, 538 U.S. at 98–99)]. Likewise, Defendant contends that, though the *Snyder* court took issue with offense-based classifications absent individual evaluation, the Supreme Court has held that "[t]he Ex Post Facto Clause does not preclude a State from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences." [*Id.* (quoting *Smith*, 538 U.S. at 103)]. Lastly, Defendant argues that the Sixth Circuit's holding in *Snyder* was prospectively repudiated by the Supreme Court's prior holding in *Smith* and thus has no persuasive value in this case.

A legal obligation may be characterized a "legal punishment" if: (1) it involves pain or other consequences typically considered unpleasant; (2) it follows from an offense against legal rules; (3) it applies to the actual (or supposed) offender; (4) it is intentionally administered by people other than the offender; and (5) it is imposed and administered by an authority constituted by a legal system against which the offense was committed. *Snyder*, 834 F.3d at 701 (quoting H.L.A. Hart, *Punishment and Responsibility* 4–5 (1968)). The *Snyder* court concluded that the Michigan statute specifically resembled the punishment of banishment as it related to the geographical restrictions on where registrants could live or work. *Id.* at 701–02. Similarly, the *Snyder* court found that Michigan's SORA resembled "traditional shaming punishments" by publishing tier classifications based on "the state's estimation of present dangerousness without providing for any individualized

19

assessment." *Id.* at 702.  Finally, *Snyder* concluded that the Michigan statute resembles the punishment of "parole/probation" because of the numerous restrictions on where registrants can live and work and the requirement that they report in person, rather than by phone or mail. *Id.* at 703.

Here, the requirements of SORVTA do not impose pain on Plaintiff, but they do impose unpleasant consequences that flow from a criminal conviction and are administered by the TBI.  Granted, Plaintiff's criminal conviction is a matter of public record, but SORVTA requires Defendant to publish that information, along with much personal information about Plaintiff—date of birth, home and work addresses, driver's license number, license plate number and description of all vehicles, etc.—on a publicly accessible website for the duration of Plaintiff's life. *See* Tenn. Code Ann. 40-39-206(d).  It is true that "attendant humiliation" may be an acceptable "collateral consequence of a valid regulation." *Smith*, 538 U.S. at 99.  It is not necessarily unreasonable that SORVTA includes a passive website that requires the public to "take the initial step of going to the [website], proceed to the sex offender registry, and then look up the desired information." *Id.*  But SORVTA also requires registrants to obtain and "always have" state-issued photo identification, Tenn. Code Ann. § 40-39-213(a), that "shall bear a designation sufficient to enable a law enforcement officer to identify the bearer of the license or card as a sexual offender, violent sexual offender or violent juvenile sexual offender." Tenn. Code Ann. § 55-50-353.  Because "[s]tate-issued photo ID is a virtual necessity these days" and must be shown "to enter some businesses, to cash checks, to get a job, to buy certain items, and more," *Doe 1 v. Marshall*, 367 F. Supp. 3d 1310, 1325 (M.D. Ala. 2019), SORVTA's

requirement compels registrants to "appear in public with some visible badge of past criminality." *Smith*, 538 U.S. at 99. Further, SORVTA permits counties and municipalities to affirmatively notify "residences, schools and child-care facilities" when a registrant "resides, intends to reside, or, upon registration, declares to reside within a certain distance," through flyers, mailers, newspaper notices, and internet publications, charging registrants a yearly fee to defray the cost. Tenn. Code Ann. § 40-39-217.

Plaintiff testified that people have driven vehicles through his yard to "run donuts" and "tear up the lawn" while yelling at Plaintiff and his wife. [Doc. 41, PageID # 276–77]. Plaintiff's sex offender classification is listed on his driver's license and, during a traffic stop, an officer questioned Plaintiff whether he was aware of "your rules" and "what you are supposed to do." [*Id.* at 344]. Plaintiff's neighbor has falsely accused Plaintiff of harboring a child, among other accusations of SORVTA violations, to the police and Child and Family Services, prompting visits from both. [*Id.* at 299]. In effect, these provisions resemble the traditional punishment of shaming.

More importantly, although Plaintiff appears generally content with his residence, unlike the plaintiffs in *Snyder*, the geographic restrictions on where he can work have had a substantial impact on him. Plaintiff has explored moving to a new home, but that the restriction prevented him from finding a suitable place to move [*Id.* at 276–78]. Plaintiff has not been able to accept jobs from interested employers in his trade and craft because the locations of the businesses fall within exclusionary zones prohibited by SORVTA. [*Id.* at 280–85]; *see Snyder*, 834 F.3d at 702 ("Sex Offenders are forced to tailor much of their lives around these school zones, and, . . . they often have great difficulty in finding a place

where they may legally live or work."). While Plaintiff may enjoy similar housing and employment circumstances as he did prior to his conviction, the record reflects that SORVTAs exclusion zones have tangibly prohibited him from improving or changing those circumstances.

Similarly, Plaintiff cannot have picnics with his wife at a public park, though they previously enjoyed this activity. [Doc. 41, PageID # 302]. Plaintiff can no longer go to public libraries, despite having been a bookworm drawn to the tactile experience of books. [*Id.* at 317, 345]. Plaintiff's wife purchased him tickets to a hockey game, but believed that he could not go to the arena due to his geographic limitations. [*Id.* at 303].

In order to abide by SORVTA's exclusion zones in his county of residence, Plaintiff looks to an online map maintained on the Knoxville, Knox County, Knoxville Utilities Board Geographic Information System ("KGIS"). [Doc. 41, PageID # 278]. The map, titled "TCA Restricted Zones," shows schools, day cares, parks, and greenways in Knox County where Plaintiff may not "be upon or remain" if he has reason to believe children are present. *See* Tenn. Code Ann. § 40-39-211. The map also shows the one-thousand-foot exclusion zones where Plaintiff may not knowingly live, work, or "stand [or] sit idly" when children are present without a "specific or legitimate reason." *See* Tenn. Code Ann. § 40-39-211. This map of Knox County, much like the map considered by the Sixth Circuit in *Snyder*, 824 F.3d at 702, illustrates the dramatic extent of Plaintiff's geographic limitations under SORVTA. [Doc. 46, PageID # 749]. Thus, by perpetually limiting Plaintiff's vocation, habitation, and recreation so extensively, the restrictions of SORVTA also resemble the traditional punishment of banishment.

Finally, the reporting and travel requirements, similar to those in *Snyder*, are much like the punishment of probation or parole. Registrants must update changes in their information within 48 hours, *see* Tenn. Code Ann. § 40-39-203(a)(4), and violent sexual offenders must report in person every March, June, September, and December. Tenn. Code Ann. § 40-39-204(b)(1). Plaintiff testified that his registration requirements have limited his ability to travel to other states due to each state's rules regarding registration. [Doc. 41, PageID # 296–98]. For example, if Plaintiff were to drive to Georgia and his car were to break down requiring an extended stop, he would have to register in Georgia, yet also inform someone in Knoxville in person that he has to register somewhere else. [Doc. 41, PageID # 296–97].

Registrants must disclose any "electronic mail address information, any instant message chat or other Internet communication name or identity information that the person uses or intends to use" within three days of creation or change. Tenn. Code Ann. § 40-39-203(a)(7). As another court has noted, while this type of provision is not so restrictive as to prohibit the use of the Internet and social media, SORVTA provides law enforcement a supervisory tool to monitor registered sex offenders using email and social media. *Millard*, 265 F. Supp. 3d at 1228. Thus, this provision "resembles the supervisory aspects of parole and probation and complements and continues the states' comprehensive supervision of registered sex offenders even after they are released from the express provisions of their parole or probation." *Id.*

In sum, the Court finds that the restrictions of SORVTA are much like traditional punishments of shaming, banishment, and probation, particularly when those restrictions

are imposed for life.

### b. Does SORVTA impose an affirmative disability or restraint on Plaintiff?

Plaintiff argues that, as in *Snyder*, SORVTA "places innumerable and significant restrictions on registrants" [Doc. 3 at p. 9]. Because SORVTA restricts where registrants may live, work, or loiter, Tenn. Code Ann. § 40-39-211(d)(1)(A)–(B) (No sexual offender . . . shall knowingly . . . stand, sit idly, . . . or remain within" 1000 feet of schools, childcare facilities, public parks, playgrounds, or recreation centers when minors are present), Plaintiff argues that SORVTA puts "significant restraints on how registrants may live their lives." *Snyder*, 834 F.3d at 703.

Here, Plaintiff is restricted on where he can live, work, travel, and engage in leisure activities with his wife. He must report in-person four times a year for as long as he is on the registry, which is a lifetime commitment. It is true that Plaintiff has been content with his current residence, has not experienced a dramatic change in income, and has been assisted in his compliance by law enforcement officers. However, making the most of a difficult situation does not change the fact that SORVTA's restrictions are "direct restraints on personal conduct," particularly "since failure to comply with these restrictions carries with it the threat of serious punishment, including imprisonment." *Snyder*, 834 F.3d at 703. This factor also indicates punitive effect.

### c. Does SORVTA promote the traditional aims of punishment against Plaintiff?

Plaintiff concedes that this factor carries less weight, as SORVTA's overlapping goals could be described as civil. Nevertheless, Plaintiff argues that, like the Michigan

24

statute at issue in *Snyder*, SORVTA "advances all the traditional aims of punishment: incapacitation, retribution and specific and general deterrence." 834 F.3d at 701. Plaintiff asserts that, prior to SORVTA, he "had the opportunity to eventually be free of the registry's legal and social opprobrium." [Doc. 37, p. 10]. Hewing close to the Sixth Circuit's conclusion in *Snyder*, Plaintiff argues that the "onerous 'exclusion zones'" of SORVTA functionally equate to banishment and the published "tier classifications corresponding to the state's estimation of present dangerousness without providing for individual assessment" equates to shaming. [Doc. 37, p 10 (citing *Snyder*, 834 F.3d at 701].

Here, the permanence of the restrictions imposed on Plaintiff emulate retribution, as the perpetual restrictions are imposed on the basis of his former conviction, not his likelihood of re-offense. Likewise, the exclusion zones track the aims of specific deterrence and incapacitation by forever limiting Plaintiff's access to places and areas around places where children may be. Though SORVTA's restrictions promote deterrence, both the Supreme Court and the Sixth Circuit have emphasized that a deterrent purpose does not make a statute criminal. *Snyder*, 834 F. 3d at 704 ("To hold that the mere presence of a deterrent purpose renders such sanctions criminal would severely undermine the Government's ability to engage in effective regulation." (quoting *Smith*, 538 U.S. at 102)).

In other words, the same characteristics that support traditional punitive aims "can also rightly be described as civil and regulatory." *Snyder*, 834 F.3d at 704. On balance, the Court finds that permanence of SORVTA's restrictions, based solely on his prior offense rather than a present potential of re-offense, weigh in favor of traditional punitive aims.

### d. Does SORVTA have a rational connection to a non-punitive purpose?

Plaintiff argues that Defendant and the State of Tennessee cannot present proof that SORVTA's stated goals have been accomplished. Plaintiff emphasizes the Sixth Circuit's citation to studies placed in the record in *Snyder*, that cast "significant doubt" on the Supreme Court's finding that "[t]he risk of recidivism posed by sex offenders is 'frightening and high." *Snyder*, 834 F.3d at 704 (quoting *Smith*, 538 U.S. at 103). Defendant counters that it is "legally and logically inappropriate" to cite to and rely upon expert proof and other evidence in *Snyder*, an as-applied challenge to a different state's statute. [Doc. 47, p. 10]. In short, Plaintiff argues that there is no evidence that SORVTA's burdens have a rational connection to non-punitive purposes; Defendant argues that there is no evidence that suggests that the Plaintiff is not prone to recidivism due to the nature of his convictions.

Our sister court noted that "*Snyder* and *Smith* cited this as 'a most significant factor' in determining whether the effects of the statute are punitive." *Rausch*, 382 F. Supp. 3d at 798 (quoting *Snyder*, 834 F.3d at 704 and citing *Smith*, 538 U.S. at 102). SORVTA sets forth various legislative findings, including:

- "Repeat sexual offenders, sexual offenders who use physical violence and sexual offenders who prey on children are violent sexual offenders who present an extreme threat to the public safety. Sexual offenders pose a high risk of engaging in further offenses after release from incarceration or commitment and protection of the public from these offenders is of paramount public importance."
- "It is a compelling and necessary public interest that the public have information concerning persons convicted of sexual offenses . . . to allow members of the public to adequately

26

protect themselves and their children from these persons."

- "Persons convicted of these sexual offenses have a reduced expectation of privacy because of the public's interest in public safety."
- ". . . releasing information about offenders under the circumstances specified in this part will further the primary governmental interest of protecting vulnerable populations from potential harm."
- "The registration of offenders . . . along with the public release of specified information concerning offenders, will further the governmental interests of public safety and public scrutiny of the criminal and mental health systems that deal with these offenders."
- "To protect the safety and general welfare of the people of this state, it is necessary to provide for continued registration of offenders and for the public release of specified information regarding offenders. This policy of authorizing this release is necessary and relevant information about offenders to members of the general public is a means of assuring public protection and shall not be construed as punitive."

Tenn. Code Ann. § 40-39-201(b). These stated goals include several non-punitive purposes, such as public scrutiny of the criminal and mental health systems that deal with sex offenders, reduction of recidivism, and providing for the protection of the public.

Here, as in *Snyder* and *Rausch*, the record is devoid of support for the notion that perpetually imposing SORVTA's restrictions accomplishes these goals as applied to Plaintiff. "[W]hile it is intuitive to think that at least some sex offenders . . . should be kept away from schools, the statute makes no provision for individualized assessments of proclivities or dangerousness." *Snyder*, 834 F.3d at 705. Presumably, Defendant is arguing that the nature of Plaintiff's convictions should cause the Court to intuit the need for a lifetime obligation. The Court does not take lightly the egregiousness of Plaintiff's crimes over twenty years ago, but Defendant has not tethered any of SORVTA's non-punitive

rationale to the case at hand. While the parties quibble about the appropriateness of considering statistical findings regarding recidivism referenced in *Snyder* that is not before this Court, Defendant cannot escape the absence of evidence in this record of non-punitive purposes. Specifically, there is no indication that the restrictions of SORVTA have kept Plaintiff from re-offending or that requiring a lifetime of compliance will do so. *See Hoffman v. Vill. of Pleasant Prairie*, 249 F. Supp. 3d 951, 959 (E.D. Wis. 2017) ("[a]n individualized assessment helps to ensure that a statute's particularly harsh disability or restraint is rationally related to a non-punitive purpose") (quoting *Shaw*, 823 F.3d at 575). Instead, the restrictions have greatly limited Plaintiff's ability to acquire better-paying jobs and engage in normal, healthy recreational activities. The Court notes that Defendant certainly could demonstrate that SORVTA's restrictions are rationally related to a non-punitive purpose, that has not been accomplished here. *See id.* at 960 ("[t]he lack of evidence eliminates the possibility that the [defendant's] action was rational").

### e. Is SORVTA excessive with respect to its purposes?

Plaintiff argues that "[t]here is nothing that the State of Tennessee can show to counterbalance" the negative effects of SORVTA with the positive effects sought through SORVTA. [Doc. 37 p. 13]. Plaintiff particularly emphasizes that violations of the prohibitions and requirements are subject to stiff criminal sanctions. Specifically, Plaintiff references his 2017 arrest and felony prosecution for failing to report a Facebook account.

Defendant contends that Plaintiff has not been hampered excessively under SORVTA. Specifically, Defendant points out that Plaintiff's income is comparable to his pre-incarceration income roughly twenty years ago, he has not actively attempted to move,

he has freely engaged on the internet and he has been aided significantly in reporting and compliance by the Knox County Sheriff's Office.

Again, the record before the Court is devoid of positive consequences arising from the lifetime of restrictions placed on Plaintiff. Put simply, Defendants have not shown that the public is safer or that Plaintiff has been saved from recidivism by a lifetime of restrictions, as opposed to just ten years. *See Millard*, 265 F.Supp.3d at 1230 ("[t]hese sweeping registration and disclosure requirements—in the name of public safety but not linked to a finding that public safety is at risk in a particular case—are excessive in relation to [the statute's] expressed public safety objective"). Rather, Defendant's efforts to dispel the heaviness of SORVTA's burdens only serve to frame the absence of positive effects from their imposition. Again, this is not to say that such proof could never be produced, but Defendant has not done so here.

### 3. Conclusion

Defendant contends that Plaintiff's burdens under SORVTA are overstated and that the "registration, reporting, and surveillance components are not of a type that we have traditionally considered as a punishment." [Doc. 39, p. 8 (quoting *Bredesen*, 507 F.3d at 1005)]. Further, Defendant argues that the restrictions of SORVTA and in-person reporting requirements are akin to Oklahoma's, which were upheld by the Tenth Circuit. [Doc. 39, p. 9 (citing *Shaw*, 823 F. 3d at 566, 568–69)]. However, even if each individual restriction passes muster in isolation, Plaintiff's motion for summary judgment has attacked the retroactive lifetime imposition of all of SORVTA's requirements, which have grown since SORVTA's enactment. Consequently, the Court must consider the combined,

cumulative lifetime impact of all of SORVTA's requirements on Plaintiff. *See, e.g.*, *Rausch*, 382 F. Supp. 3d at 799 (citing *Smith*, 538 U.S. at 97).

Plaintiff contends that his lifetime obligation under SORVTA, if unconstitutional, compels the relief demanded in his complaint. [Doc. 37, p. 5]. In his complaint, Plaintiff seeks a declaration that the whole of SORVTA and its amendments are unconstitutional on ex post facto grounds and seeks a permanent injunction barring the TBI from enforcing SORVTA against him. This assumes that the whole of SORVTA falls if SORVTA's lifetime obligation is unconstitutional under the Ex Post Facto Clause. But upon its enactment, SORVTA provided that, if any provision "or the application thereof to any person or circumstance is held invalid, such invalidity shall not affect other provisions or applications of the act which can be given effect without the invalid provision or application, and to that end the provisions of this act are declared to be severable." 2004 Tenn. Pub. Acts ch. 921, § 5. Though the matter of severability is not addressed by the parties, the Court does not adopt Plaintiff's assumption that *all* of SORVTA must be declared unconstitutional if its lifetime obligation is unconstitutional.

In 2010, the Tennessee Supreme Court articulated that, "[f]rom the perspective of someone who has served his or her entire sentence of incarceration and/or parole, an additional sentence of lifetime supervision is an undesirable and punitive consequence." *Ward v. State*, 315 S.W.3d 461, 475 (Tenn. 2010). Though it found that the 2010 iteration of SORVTA did not have a punitive effect, thereby passing muster under the Ex Post Facto Clause, the Tennessee Supreme Court noted SORVTA's continued expansion of requirements and restrictions. *Id.* at 472. As a harbinger of this case and forewarning to

the Tennessee General Assembly, the Tennessee Supreme Court explained that nothing in its opinion "preclude[d] the possibility that an amendment to the registration act imposing further restrictions may be subject to review on the grounds that the additional requirements render the effect of the act punitive." *Id.*; *see also Foley v. State*, No. M201801963CCAR3PC, 2020 WL 957660, at *8 (Tenn. Crim. App. Feb. 27, 2020) (Holloway, Jr., J., concurring) (articulating concern that post-*Ward* additions to SORVTA may have given it a punitive effect in violation of the Ex Post Facto Clause).

Here, the Court concludes that the effect of lifetime compliance with SORVTA is punitive as it relates to Plaintiff. SORVTA has hampered his employment opportunities, prevented him from finding an alternative residence, and demanded onerous reporting requirements without an individualized assessment of whether those requirements and restrictions are necessary to protect the public from Plaintiff. Defendant has not shown that the benefits of SORVTA to the State of Tennessee outweigh the negative consequences to Plaintiff. Further, Defendant has not provided an individualized justification for the imposition of SORVTA's burdens for the remainder of Plaintiff's life. Further still, Defendant has suggested that ease of parking and helpful law enforcement officers have mitigated SORVTA's burdens, rather than meeting Plaintiff's "clearest proof" of the punitive effects that SORVTA has had. In short, the retroactive imposition of lifetime compliance violates the Ex Post Facto Clause as applied to Plaintiff, and Plaintiff is entitled to summary judgment on this claim.

Lastly, let the Court be abundantly clear: because this is an as-applied challenge, this finding is limited to this Plaintiff. *See Voinovich*, 130 F.3d at 193 ("In an as-applied

challenge, the plaintiff contends that application of the statute in the particular context in which he has acted, or in which he proposes to act, would be unconstitutional." (quoting *Ada v. Guam Soc'y of Obstetricians & Gynecologists*, 506 U.S. 1011, 1012 (1992))). Though SORVTA's lifetime obligation has been found unconstitutional as applied to Plaintiff, it may continue to be enforced in circumstances where it is constitutional. *See id.*

### B. First Amendment (Incorporation and Substantive Due Process)

Plaintiff raises facial and as-applied attacks against SORVTA's internet reporting requirements under the First Amendment, which is incorporated to the states through the Fourteenth Amendment. Specifically, Plaintiff argues that the compulsion to report this information infringes a First Amendment right to speak anonymously.

SORVTA requires registrants to report what are often called internet identifiers. Specifically, registrants must report "[a] complete listing of the offender's electronic mail address information, including usernames, any social media accounts the offender uses or intends to use, instant message, other internet communication platforms or devices, and the offender's username, screen name, or other method by which the offender accesses these accounts or websites." Tenn. Code Ann. § 40-39-203(i)(17). Though the "language of this statutory requirement is confusing," it is apparent that SORVTA requires a registrant "to disclose any username or account he or she uses for an "Internet communication platform[]." *Haslam*, No. 3:16-CV-02862, 2017 WL 5187117, at *17 (quoting Tenn. Code Ann. § 40-39-203(i)(17)).

This information is not publicly available, *see* Tenn. Code Ann. § 40-39-203(m), 206(d)(1)–(16), but may be shared with "appropriate law enforcement agencies" without

apparent limitations, Tenn. Code Ann. § 40-39-214(b), and any "business or organization that offers electronic communication or remote computing services for the purpose of prescreening users or for comparison with information held by the requesting business or organization." Tenn. Code Ann. § 40-39-203(m). Any changes to or creation of internet identifiers must be reported within three days, excluding holidays. Tenn. Code Ann. § 40-39-203(a)(7).

The Court will first discuss the nature of anonymous speech rights in this context then address the propriety of entertaining this constitutional challenge, either facially or as it is applied to Plaintiff.

### 1. Anonymous Speech

The Supreme Court has held that an author's desire to speak anonymously "is an aspect of the freedom of speech protected by the First Amendment." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995). Because "[a]nonymity is a shield from the tyranny of the majority[,] [i]t thus exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation— and their ideas from suppression—at the hand of an intolerant society." *Id.* at 357 (citation omitted). Accordingly, the protection of anonymous speech under the First Amendment extends to the internet. *Doe v. Snyder*, 101 F. Supp. 3d 672, 701 (E.D. Mich. 2015) (citations omitted); *see also Reno v. ACLU*, 521 U.S. 844, 870 (1997) (explaining that the internet allows "any person with a phone line [to] become a town crier with a voice that resonates farther than it could from any soapbox" and that "our cases provide no basis for qualifying the level of First Amendment scrutiny that should be applied to this medium");

*Doe v. Shurtleff*, 628 F.3d 1217, 1222 (10th Cir. 2010) (explaining that First Amendment speech protections extend to the medium of the internet).

In the context of sex offender laws, states have generally adopted two approaches to guard against the use of the internet to exploit vulnerable populations: (1) banning registrants from accessing particular types of internet activity, *see, e.g.*, *Packingham v. North Carolina*, 137 S.Ct. 1730 (2017) (banning use of social media); *Doe v. Nebraska*, 898 F.Supp.2d 1086 (D. Neb. 2012) (banning use of social media); or (2) requiring registrants to report internet account information, with varying degrees of specificity, purposes, and means of reporting. *See, e.g. Doe v. Harris*, 772 F.3d 563, 577 (9th Cir. 2014) (requiring registrants to report internet identifier changes within twenty-four hours); *White v. Baker*, 696 F. Supp. 2d 1289, 1294 (N.D. Ga. 2010) (requiring registrants to report internet identifier changes within seventy-two hours).

Regardless, "the 'distinction between laws burdening and laws banning speech is but a matter of degree.'" *Harris*, 772 F. 3d at 572 (quoting *Sorrell v. IMS Health, Inc*., 564 U.S. 552, 565–66 (2011)). Though state laws in the latter category, like SORVTA, do not directly prohibit speech, such laws do burden a registrant's "ability and willingness to speak on the Internet," *Harris*, 772 F.3d at 572, and may create an "affirmative obligation" to report activity should they seek to create or change their internet identifier. *See Lamont v. Postmaster Gen*., 381 U.S. 301, 307 (1965).

Anonymous speech rights, like all First Amendment speech rights, are not absolute. *See White v. Baker*, 696 F. Supp. 2d 1289, 1303–04 (N.D. Ga. 2010) ("*McIntyre* also carefully notes that not all speech—and specifically not all anonymous speech—is

constitutionally protected." (citing 514 U.S. at 357)); *see also Haslam*, No. 3:16-CV-02862, 2017 WL 5187117, at *17. Accordingly, some burdens, like "the mandatory disclosure in public of a speaker's identity," have been found to be unconstitutionally weighty, while other burdens, such as providing "information to the government that could later be used to trace speech back to its source," are not. *See Shurtleff*, 628 F.3d at 1222–23 (citations omitted).

## 2. Facial and As-Applied Challenge

### a. Facial Challenge

Generally, a statute is facially unconstitutional if there are "no set of circumstances exists under which the Act would be valid," *United States v. Salerno*, 481 U.S. 739, 745 (1987); *see also City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 798 n. 15 (1984) (explaining that a statute is facially invalid when "every application of the statute created an impermissible risk of suppression of ideas"). However, due to the unique nature of free speech rights, "[t]he Constitution gives significant protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 244 (2002). As a result, the First Amendment provides "'a second type of facial challenge,' whereby a law may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *United States v. Stevens*, 559 U.S. 460, 473 (2010) (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449, n. 6 (2008)).

Though less exacting, overbreadth analysis is still "'strong medicine' that is used 'sparingly and only as a last resort.'" *New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 14 (1988) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)). Accordingly, courts in the Sixth Circuit "will not apply the 'strong medicine' of overbreadth analysis where the parties fail to describe the instances of arguable overbreadth of the contested law." *Speet v. Schuette*, 726 F.3d 867, 878 (6th Cir. 2013) (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 n. 6 (2008)). In other words, a plaintiff may not simply attempt to 'leverag[e] a few alleged unconstitutional applications of the statute into a ruling invalidating the law in all of its applications.'" *Id* (quoting *Connection Distrib. Co*., 557 F.3d at 340). However, courts are encouraged to use "this expansive remedy" if "the threat of enforcement of an overbroad law may deter or 'chill' constitutionally protected speech," particularly when "the overbroad statute imposes criminal sanctions." *Speet v. Schuette*, 726 F.3d 867, 878 (6th Cir. 2013) (quoting *Virginia v. Hicks*, 539 U.S. 113, 119 (2003)).

Here, the factual record before the Court only identifies the effects that SORVTA's internet identifier reporting requirements have had on Plaintiff. Likewise, briefs of the parties have largely failed to address SORVTA's facial constitutionality, instead focusing on Plaintiff's circumstances. This creates two barriers to the Court's adjudication of Plaintiff's facial attack.

First, "the parties fail[ed] to describe the instances of arguable overbreadth of the contested law," *Speet*, 726 F.3d at 878 (quoting *Wash. State Grange*, 552 U.S. at 450 n. 6); *see Glenn*, 690 F.3d at 422 (finding that the record was "'utterly barren about whether

some, many, indeed any, [other people] [were] affected by . . . application of the statute.'" (quoting *Connection Distrib. Co*., 557 F.3d at 338–39)); *Connection Distrib. Co*., 557 F.3d at 336 (stating that the plaintiff bears "'the burden of *demonstrating* . . . substantial overbreadth.'" (quoting *Hicks*, 539 U.S. 113, 122 (2003)) (emphasis added)); *United States v. Coss*, 677 F.3d 278, 289 (6th Cir. 2012) (stating that a plaintiff "'must demonstrate from the text of the statute *and from actual fact* that a substantial number of instances exist in which the law cannot be applied constitutionally.'" (quoting *Am. Booksellers Found. for Free Expression v. Strickland*, 601 F.3d 622, 627 (6th Cir. 2010)) (emphasis added); *accord Speet v. Schuette*, 726 F.3d 867, 878 (6th Cir. 2013) (comparing the ample record before the court to instances where the record was insufficient for facial review for First Amendment overbreadth). Accordingly, without evidence that the statute is overbroad in relation to other registrants, the Court certainly cannot conclude that it is *substantially* overbroad.

Second, though "[l]itigation by hypothetical" is "sometimes required in free-speech cases," *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 335 (6th Cir. 2009) (citations omitted), Plaintiff's arguments are limited to cursorily comparing SORVTA to two related, yet distinguishable cases—*Shurtleff* and *Packingham*. In *Packingham,* the Supreme Court struck down a North Carolina law on First Amendment grounds that prohibited registered sex offenders from "access[ing] a commercial social networking Web site where the sex offender knows that the site permits minor children to become members or to create or maintain personal Web pages." 137 S. Ct. at 1733 (quoting N.C. Gen. Stat. Ann. §§ 14–202.5(a), (e) (2015)). Here, SORVTA does not ban speech on any internet platforms and,

though, "the 'distinction between laws burdening and laws banning speech is but a matter of degree'" *Harris*, 772 F. 3d at 572, the degree of difference between these two statutes is substantial. In *Shurtleff*, the United States Court of Appeals for the Tenth Circuit upheld a Utah law that required registered sex offenders to report internet identifiers in the face of a First Amendment attack. 628 F.3d at 1225. The Tenth Circuit noted that an unconstitutional chilling effect has never arisen "merely from the individual's knowledge that a governmental agency was engaged in certain [information-gathering] activities or from the individual's concomitant fear that, armed with the fruits of those activities, the agency might in the future take some other and additional action detrimental to that individual." *Id.* (quoting *Laird v. Tatum*, 408 U.S. 1, 11 (1972)). Likewise, the Tenth Circuit noted that "the Supreme Court has suggested a distinction between the mandatory disclosure in public of a speaker's identity and the requirement that a speaker provide information to the government that could later be used to trace speech back to its source." *Id.* at 1222–23 (citing *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182 (1999); *McIntyre*, 514 U.S. at 342). Here, as Plaintiff points out, SORVTA does not expressly limit law enforcement's use of internet identifier information like Utah's statute. But Plaintiff has not provided authority for the notion that this has a *facially* unconstitutional chilling effect, and "[t]his court is not obligated to research and construct legal arguments open to parties, especially when they are represented by counsel as in this case." *John v. Barron*, 897 F.2d 1387, 1393 (7th Cir. 1990), *cert. denied*, 498 U.S. 821 (1990); *see also Laird*, 408 U.S. at 11 (noting that a chilling effect does not arise only because a governmental agency is gathering information and could take future action).

To be sure, SORVTA's internet identifier reporting requirements may be amenable to review for substantial overbreadth since there is an attendant threat of criminal sanctions. Though the Court's ruling on Plaintiff's ex post facto claim also alleviates Plaintiff's specific First Amendment concerns, as discussed *infra*, "[l]itigants . . . are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973). Likewise, SORVTA's internet identifier reporting requirements are not a paragon of statutory draftsmanship. *See Haslam*, No. 3:16-CV-02862, 2017 WL 5187117, at *17. But the Court will not "answer abstract questions" with only the undersigned's "judicial imagination" as a guide, *Connection Distrib. Co.*, 557 F.3d at 341 (citing *United States v. Raines*, 362 U.S. 17, 22 (1960)), and this "contextual vacuum . . . counsels in favor of choosing discretion over valor." *Id.* (citing *New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 14 (1988)). Thus, without concrete evidence that SORVTA's internet identifier reporting requirements are substantially overbroad or a sufficient basis for abstract constitutional review, Plaintiff's *facial* First Amendment attack cannot survive summary judgment. *See generally Doe v. City of Albuquerque*, 667 F.3d 1111, 1124 (10th Cir. 2012) (stating that "the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge." (quoting *Citizens United v. FEC*, 558 U.S. 310, 331 (2010))).

### b. As-Applied Challenge

As for Plaintiff's as-applied challenge, Plaintiff emphasizes the interaction between SORVTA's internet identifier reporting requirements and SORVTA's lifetime obligation. *See* [Doc. 46, p. 11 ("Chilling an individual's speech *for life* does not qualify as "narrowly tailored" under any set of circumstances." (emphasis added)).]

It is "a well-established principle" that a court "will not decide a constitutional question if there is some other ground upon which to dispose of the case." *Bond v. United States*, 572 U.S. 844, 855 (2014) (citing *Escambia County v. McMillan*, 466 U.S. 48, 51 (1984) (per curiam); *Ashwander v. TVA*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring)); *see also Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.*, 560 U.S. 702, 744–45 (2010) (Breyer, J., concurring in part) (stating that a court should "confine" itself "to deciding only what is necessary to the disposition of the immediate case" (quoting *Whitehouse v. Illinois Central R. Co.*, 349 U.S. 366, 373 (1955)); *Sandvig, et al. v. Barr*, No. CV 16-1368 (JDB), 2020 WL 1494065, at *7 (D.D.C. Mar. 27, 2020) (finding that resolution of issues on other grounds meant "that the First Amendment claims plaintiffs 'presented are no longer live'" (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969))); *Simonian v. Hunter Fan Co.*, No. 210CV02771JPMCGC, 2011 WL 13116674, at *3 (W.D. Tenn. May 19, 2011) (declining to resolve a constitutional issue because the matter was resolved on another ground).

Here, the Court has already addressed constitutionality of SORVTA's lifetime obligation under the Ex Post Facto Clause. As this lifetime obligation is an essential component of Plaintiff's claim that SORVTA's internet identifier requirements are not

narrowly tailored, it would be inappropriate and duplicative to address the nature of Plaintiff's as-applied First Amendment claim. Having effectively resolved this claim on ex post facto grounds, the Court will not unnecessarily grant relief on First Amendment grounds as well.

### 3. Conclusion

In sum, Plaintiff has not provided concrete evidence that SORVTA's internet identifier reporting requirements are substantially overbroad or a sufficient basis for abstract constitutional review, so his facial First Amendment attack must fail. Plaintiff's as-applied attack argues that SORVTA's internet identifier reporting requirements are not narrowly tailored because they persist for life, but the Court has resolved SORVTA's lifetime obligation under the Ex Post Facto Clause. Consequently, the Court's ex post facto decision disposes of the basis for Plaintiff's First Amendment claim. *See generally Bond*, 572 U.S. at 855; *McMillan*, 466 U.S. at 51; *Sandvig*, No. CV 16-1368 (JDB), 2020 WL 1494065, at *7; *Simonian*, No. 210CV02771JPMCGC, 2011 WL 13116674, at *3. Defendant's motion for summary judgment as to Count IV will be granted.

### C. Fourteenth Amendment

Plaintiff has also challenged SORVTA under the Due Process Clause of the Fourteenth Amendment. The Fourteenth Amendment prohibits state actors from depriving an individual of life, liberty, or property without due process of law. U.S. Const. amend. XIV. "The Due Process Clause contains both a procedural and a substantive component." *Doe v. DeWine*, 910 F.3d 842, 851 (6th Cir. 2018). Here, Plaintiff has challenged SORVTA under both components on varying grounds.

Plaintiff largely conflates his varying due process claims and includes arguments that have already been foreclosed at the motion to dismiss stage. Plaintiff contends that SORVTA's retroactivity violates due process and that "the procedural due process claim should be considered in tandem with the *ex post facto* prohibition." [Doc. 46, p. 16]. However, Plaintiff's Due Process claim arising from SORVTA's retroactivity was time-barred and previously dismissed. *Doe v. Gwyn*, No. 3:17-CV-504, 2018 WL 1957788, at *6 (E.D. Tenn. Apr. 25, 2018). Likewise, to the extent that Plaintiff tangentially argues that he was deprived of notice and an opportunity to be heard because he was not given an individualized hearing, that argument has been repeatedly trod and the avenue has been foreclosed. *See Connecticut Dep't of Public Safety v. Doe*, 538 U.S. 1 (2003); *Doe v. DeWine*, 910 F.3d 842, 851 (6th Cir. 2018); *Rausch*, 382 F. Supp. 3d at 801 (rejecting an identical argument regarding SORVTA under the precedent set forth in *Connecticut Dep't of Public Safety* and *DeWine*).

Moreover, Plaintiff appears to suggest that, in addition to the First Amendment's incorporation to the states through the Fourteenth Amendment, a right to anonymous political speech is also a substantive due proves right that demands a separate form of strict scrutiny review. [Doc. 46, p. 14–15 (citing *United States v. Carolene Prod. Co*., 304 U.S. 144, 153 n. 4 (1938)]. However, governmental speech regulation "unrelated to the content of speech[,] are subject to an intermediate level of scrutiny." *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 642 (1994); *see also Doe v. Haslam*, No. 3:16-CV-02862, 2017 WL 5187117, at *18 (M.D. Tenn. Nov. 9, 2017) (finding that intermediate scrutiny is the appropriate standard for reviewing SORVTA's internet reporting requirements).

SORVTA does not *ban* anonymous political speech, and it imposes a content-neutral burden. Likewise, Courts that have confronted similar statutes—those that impose a content-neutral burden—have applied intermediate scrutiny. See Doe v. Harris, 772 F.3d 563, 576 (9th Cir. 2014) (listing cases). Principles of substantive due process do not provide an alternative path and standard for adjudicating Plaintiff's First Amendment claim, as the First Amendment is incorporated to the states through the Fourteenth Amendment. *See Carolene Prod. Co.*, 304 U.S. at 153 n. 4 (explaining that the scope of the rights "of the first ten Amendments . . . are deemed equally specific when held to be embraced within the Fourteenth [Amendment]") (citations omitted).

Nevertheless, Plaintiff's seventh and eighth claims are still before the Court.

### 1. Criminal Liability Without Actual Knowledge

Plaintiff's seventh claim contends that SORVTA's provisions that bar Plaintiff from residing, working, or loitering in the relevant exclusion zones "impose[] criminal liability, without requiring proof of actual knowledge of the duty to comply with the Act, for passive conduct that does not 'alert the doer to the consequences of his deed." [Doc. 1, p. 40 (quoting *Lambert v. People of the State of California*, 355 U.S. 225, 228 (1957))]. However, Plaintiff has not provided further support for this claim.

Tenn. Code Ann. § 40-39-211, the provision of SORVTA at issue, criminalizes conduct undertaken with *knowledge*. Specifically, by the language of the statute, criminal liability only arises if Plaintiff *knowingly* takes up residence in, undertakes employment in, or loiters in the specified areas. *See* Tenn. Code Ann. § 40-39-211. Under the Tennessee Criminal Code, "a person who acts knowingly with respect to the conduct or to

circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." Tenn. Code Ann. § 39-11-302(b). In short, Plaintiff has not shown that SORVTA imposes criminal liability for "wholly passive" conduct. Defendant's motion for summary judgment as to Count VII will be granted.

### 2. Vagueness and Impossibility

Plaintiff's eighth claim contends that SORVTA's restrictions related to living, working, standing, or sitting idly in specifically defined zones are impermissibly vague or otherwise require impossible compliance. However, despite Plaintiff's broadside attack on SORVTA's "Kafkaesque twists and turns," [Doc. 46, p. 13], Plaintiff only specifies two portions of Tenn. Code Ann. § 40-39-211(d)(1)(B) with which he takes issue: (1) SORVTA's requirement that Plaintiff not knowingly "[s]tand, [or] sit idly" in an exclusion zone , and (2) SORVTA's creation of an exclusion zone around "other child care facility[ies]." [Doc. 46, p. 13].

The Court will first examine these specified portions for unconstitutional vagueness, then address impossibility.

### a. Vagueness

Plaintiff laments the ambiguity of this provision, emphasizing its ambiguity through attenuated hypotheticals. [Doc. 46, p. 13]. Citing *Grayned v. City of Rockford*, Defendant contends that SORVTA's exclusion zone prohibitions are sufficiently clear for a person of ordinary intelligence to understand and only criminalize knowing conduct. [Doc. 39, pp. 13–16 (citing 408 U.S. 104 (1972)]. Further, Defendant argues that Plaintiff's vagueness claim must be construed as an as-applied attack. [Doc. 39, p. 14 (citing *United States v.*

*Kernell*, 667 F.3d 746, 750 (6th Cir. 2012); *United States v. Krumrei*, 258 F.3d 535, 537 (6th Cir. 2001) ("[I]t is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand."))].

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford,* 408 U.S. 104, 108 (1972). This doctrine serves two goals: (1) "to ensure fair notice to the citizenry" and (2) "to provide standards for enforcement by the police, judges, and juries." *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1104 (6th Cir. 1995). Courts adhere to a two-part test to determine whether the statute at hand is unconstitutionally vague in light of these goals. First, a court asks whether the law gives a person "of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned*, 408 U.S. at 108. Second, a court asks whether the statute provides sufficiently "explicit standards for those who apply them." *Grayned*, 408 U.S. at 108.

But because statutes are inherently "[c]ondemned to the use of words, we can never expect mathematical certainty from our language." *Grayned*, 408 U.S. at 110. Rather, "[t]he degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982). The Supreme Court has "expressed greater tolerance of enactments with civil rather than criminal penalties . . . [and] recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that

45

his conduct is proscribed." *Id.* at 498–99. Moreover, "the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights."

Because vagueness analysis is not mechanical, statutes are not *unconstitutionally* vague "simply because difficulty is found in determining whether certain marginal offenses fall within their language." *United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32 (1963). Statutes are also not unconstitutionally vague solely because they "may be stringent and harsh." *Barsky v. Bd. of Regents*, 347 U.S. 442, 448 (1954).

Here, Tenn. Code Ann. § 40-39-211(d)(1)(B) carries severe criminal sanctions. However, Plaintiff suggests no constitutionally protected rights threatened by its ambit. Moreover, the statute carries a scienter requirement—knowledge—as discussed previously. Though the statute in isolation presents troubling ambiguities in its language,[6] it must be established "that the statute is vague . . . , not merely that the statute could be construed as vague in some hypothetical situation." *Krumrei*, 258 F.3d at 537 (citing *United States v. Avant*, 907 F.2d 623, 625 (6th Cir. 1990)). Instead, the parties' briefs rest on quibbles over hypotheticals and definitions outside the statute. There is little to no discussion, let alone evidence, as to how the statute functions. "Hypotheticals are a favorite tool of those bringing vagueness challenges, but . . . almost any criminal or civil prohibition is susceptible to clever hypotheticals testing its reach." *Platt v. Bd. of Commissioners on*

---

[6] For example, what does it mean to stand or sit "idly"? Defendant suggests that sitting idly means to do so without a "real reason." [Doc. 39, p. 16 (citing *Idly*, MacmillanDictionary.com (Macmillan Education, Ltd. 2020)]. Would spectating a sporting event count as standing or sitting "idly"? The Court asks these questions to note that Plaintiff's concerns about the statute's scope are not unfounded. But a constitutional vagueness challenge requires more than hypotheticals when a plaintiff does not argue that First Amendment rights have been implicated. *See Krumrei*, 258 F.3d at 537.

*Grievances & Discipline of Ohio Supreme Court*, 894 F.3d 235, 251 (6th Cir. 2018); *see*

*Schickel v. Dilger*, 925 F.3d 858, 879 (6th Cir. 2019).

To be sure, Plaintiff has dramatically augmented his behavior, presumably in fear

of transgressing this statute, [Doc. 41, PageID # 302–03, 317, 344–45; Doc. 42, PageID #

527], and he need not risk arrest and prosecution to challenge the constitutionality of a

criminal statute. *See Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298

(1979); *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). But "[s]pecific facts matter,"

*Schickel*, 925 F.3d at 879 (quoting *Platt*, 894 F.3d at 248), and Plaintiff has not made any

effort to elucidate how the statute has specifically compelled him to change his conduct,

other than a broad, ill-defined fear of enforcement. This is not enough to sustain his

vagueness challenge.

### b. Impossibility

Plaintiff likewise claims that adherence to SORVTA is, alternatively, a "law with

which it is impossible to comply." [Doc. 1, p. 41]. However, Plaintiff's impossibility

argument suffers the same deficiency as his vagueness arguments.

Courts have articulated that "[h]olding an individual criminally liable for

failing to comply with a duty imposed by statute, with which it is legally impossible to

comply, deprives that person of his due process rights." *Haslam*, No. 3:16-CV-02862, 2017

WL 5187117, at *19 (quoting *Doe v. Snyder*, 101 F. Supp. 3d 722, 724 (E.D. Mich. 2015)).

Those courts have also articulated that such "impossibility" claims are "fact-dependent."

*Id.*

Here, Plaintiff has pointed to no specific facts that support that compliance is impossible.  In absence of a basis to find the only identified portion of SORVTA unconstitutionally vague or impossible, Defendant's motion for summary judgment as to Count VIII will be granted.

### 3.  Conclusion

In sum, Plaintiff's Due Process claims have either been resolved previously in this litigation or have failed to provide a basis upon which to grant relief.  Defendant's motion for summary judgment as to Counts VI and VIII will be granted.

## IV.  Relief

Turning to matter of remedies, Plaintiff seeks declaratory and injunctive relief, along with attorney fees and costs. [Doc. 37, pp. 16–18].  Specifically, Plaintiff seeks a declaratory judgment that the retroactive application of SORVTA to him violates the Ex Post Facto Clause of the United States Constitution and that his Due Process rights have been violated.  Plaintiff also seeks a permanent injunction, prohibiting the TBI from enforcing SORVTA against him and requiring that the TBI remove Plaintiff from the SOR. Defendant argues that Plaintiff's constitutional claims do not have merit and therefore do not warrant this relief.  [Doc. 47, p. 16].

As stated above, the Court agrees that declaratory relief pursuant to 28 U.S.C. § 2201 is appropriate; the retroactive application of SORVTA's requirements and restrictions for the whole of Plaintiff's life violates the Ex Post Facto Clause.  Under 28 U.S.C. § 2202, "[f]urther necessary or proper relief based on a declaratory judgment," such as injunctive relief, "may be granted, after reasonable notice and hearing." 28 U.S.C. § 2202.

Under "well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Under this test, the plaintiff must show "(1) that [he] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.* (citing *Weinberger v. Romero—Barcelo,* 456 U.S. 305, 311–313 (1982); *Amoco Production Co. v. Gambell,* 480 U.S. 531, 542 (1987)).

Here, the Court's previous findings outline that the first two elements have been met. As to the third element, the Court finds that, on balance of the relative hardships to the parties, an injunctive remedy of appropriate scope is warranted. Lastly, the public interest would not be disserved by a permanent injunction of appropriate scope. Consequently, pursuant to Fed. R. Civ. P. 65(d), the Court finds that Plaintiff's request for injunctive relief is appropriate as to the application of Tenn. Code Ann. § 40-39-207(g)(2)(B) & (C)—the source of Plaintiff's lifetime obligation under SORVTA—to him. As the other constitutional bases for which Plaintiff seeks relief are either resolved by the grant of relief on ex post facto grounds or have been insufficiently supported, the Court will not grant declaratory or injunctive relief for Plaintiff's First Amendment claim (Count IV) or remaining Fourteenth Amendment claims (Counts VII, VIII).

Despite granting the aforementioned relief, the Court will not order Plaintiff's removal from the SOR. SORVTA, in its current form, provides that a registrant "may file

a request for termination of registration requirements with TBI headquarters in Nashville."
Tenn. Code Ann. § 40-39-207(a)(1). Upon receipt of that request, the TBI is then required
to review the offender's file for compliance with the Act and conduct fingerprint and
criminal history checks. Tenn. Code Ann. § 40-39-207(b). If the offender has not been
convicted of any additional sexual offenses within ten years and "the offender has
substantially complied" with the SORVTA, the TBI "shall" remove the offender's name
from the SOR. Tenn. Code Ann. § 40-39- 207(c)(3). In short, removal from the SOR is
not automatic, and the Court is not in a position to preempt the TBI's evaluation of any
future request for removal by Plaintiff.

Plaintiff has requested that, if the Court does not order Plaintiff's removal from the
SOR, the Court hold that the TBI "may not consider Plaintiff's misdemeanor conviction
for violating [SORVTA] in any future application/request to the TBI to be removed from
the registry." [Doc. 46, p. 8 n. 2]. Because 28 U.S.C. § 2202 permits a court to order
injunctive relief if declaratory relief is appropriate, Plaintiff "requests that this Court enjoin
the Defendant from refusing to release Plaintiff from the SOR on the basis of having
violated a law that as applied to him is unconstitutional." [*Id.*].

While substantial compliance with SORVTA is part of the TBI's consideration of a
registrant's eligibility for removal, whether a registrant has "substantially complied" with
SORVTA is a question left to the TBI's discretion. There is no indication that the TBI
would refuse to remove Plaintiff from the SOR on the basis of his conviction, though this
is not an irrational concern. Nevertheless, it would be inappropriate for this Court to
prospectively dictate to the TBI what it can and cannot consider when exercising the

discretion given to it by the Tennessee General Assembly. In short, "the federal courts established pursuant to Article III of the Constitution do not render advisory opinions." *Laird v. Tatum*, 408 U.S. 1, 14 (1972) (quoting *United Public Workers of America (C.I.O.) v. Mitchell*, 330 U.S. 75, 89 (1947)).

Likewise, such injunctive relief would be inappropriate because Plaintiff is not without recourse to seek removal. If Plaintiff's request is denied based on "substantial noncompliance" as he fears, he may either "petition the chancery court of Davidson County or the chancery court of the county where [Plaintiff] resides . . . for review of the decision" or petition again for termination "no sooner than five (5) years after the previous denial" or Tenn. Code Ann. § 40-39-207(e), (g)(1). While the prospect of denial due to his previous SORVTA conviction may feel like "the height of irony, not to mention cruel," these sentiments do not warrant the issuance of an advisory opinion or the speculative issuance of injunctive relief.

Finally, pursuant to 42 U.S.C. § 1988(b), Plaintiff has requested an award of attorney's fees and costs as a prevailing party in claims brought under 42 U.S.C. § 1983. In light of the conclusions set forth above, the Court finds that Plaintiff is a prevailing party as he has obtained at least some relief on the merits of his claims. *See Farrar v. Hobby*, 506 U.S. 103, 111 (1992).

### V.     Conclusion

For the reasons set forth herein, Plaintiff's motion for summary judgment [Doc. 36] will be **GRANTED in part** as to Plaintiff's Ex Post Facto Clause claim and **DENIED in part** as to his First and Fourteenth Amendment claims. Defendant's motion for summary

judgment [Doc. 38] will be **GRANTED in part** as to the Plaintiff's First and Fourteenth Amendment claims and **DENIED in part** as to Plaintiff's Ex Post Facto Clause claim. The Court finds that Plaintiff is entitled to declaratory and injunctive relief to be set forth in the accompanying order. Further, as a prevailing party, Plaintiff is entitled to reasonable attorney's fees to be determined after submission of an appropriate motion and supporting documentation. An appropriate order will be entered.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**

Case 3:17-cv-00504-PLR-HBG   Document 61   Filed 05/14/20   Page 52 of 52   PageID #: 1614